### RUDCO OIL & GAS CO. v. UNITED STATES.

#### No. 47808.

United States Court of Claims.
March 7, 1949.

Maxwell M. Mahany, of Tulsa, Okl., for plaintiff.

J. H. Sheppard, of Washington, D. C., and H. G. Morison, Asst. Atty. Gen., for defendant.

Before JONES, Chief Justice, and LITTLETON, WHITAKER, MADDEN, and HOWELL, Judges.

MADDEN, Judge.

The plaintiff is a corporation whose 500 shares were, at the times here pertinent, owned, except for two qualifying shares, by Ike Rudman and his wife Rose Rudman, the husband owning 475 and the wife 23. The corporation was the lessee in a number of oil and gas leases which it was operating and from which it was producing and selling oil. On September 30, 1943, the plaintiff's board of directors, consisting of Mr. and Mrs. Rudman and their daughter, who held a qualifying share, determined that a dividend should be paid out of the current years' earnings, but that it should be a dividend in kind, made by transferring certain property of the company to the stockholders. It was determined that the cash position of the corporation justified paying $60,200 in dividends in 1943. A resolution was adopted pursuant to which on October 1, 1943, the plaintiff executed instruments conveying its interests in eighteen producing oil and gas leases to Mr. and Mrs. Rudman in proportion to their ownership of the shares of the plaintiff, for such length of time as would be required to pay the grantees a stated sum of money out of the production of each lease. The several sums named in the different conveyances when added together made $60,200.

The several conveyances were recorded in the counties where the leased lands lay, and the pipe-line companies which were purchasing the oil from the leases were properly notified of the transfers. The pipe-line companies thereupon paid Mr. and Mrs. Rudman for all oil received by them from these leases after October 1, for the rest of the year 1943, with one unimportant exception. By December 31, the Rudmans had received $59,461.80, and without waiting to receive the balance of the $60,200 to which the conveyances entitled them, they executed reconveyances or releases to the plaintiff of the interests which had been transferred to them. These releases were recorded, the pipe-line companies were notified, and their payments to the plaintiff were resumed as of January 1, 1944.

During the period that the conveyances to the Rudmans were in effect, the plaintiff continued to pay all costs of management and operation of the leases, as it had agreed to do in the instruments of conveyance. On its corporate books, and in its

tax returns for 1943, the plaintiff took deductions for the entire year's depreciation on its equipment and structures on the leases in question.

The Rudmans reported the $59,461.80 received by them as dividends from the plaintiff and paid their Federal income tax accordingly. The plaintiff did not report these payments as income to it in its tax return for 1943. The Commissioner of Internal Revenue assessed a tax against the plaintiff on the money which had been paid to the Rudmans on the theory that the dividend in kind declared by the plaintiff distributed to its stockholders an asset which had cost it only $3,274.11 when it acquired it, but which when distributed was worth $59,297. This appreciation in value in the hands of the corporation was treated as income. The parties are agreed that the commissioner's determination of the cost basis of the asset was correct, but they are also agreed that appreciation in value of assets held by a corporation which distributes those assets in kind does not constitute taxable gain to the corporation. General Utilities & Operating Co. v. Helvering, 296 U.S. 200, 56 S.Ct. 185, 80 L.Ed. 154; Benjamin Guinness v. United States, 73 F. Supp. 119, 109 C.Cl. 84, certiorari denied 334 U.S. 819, 68 S.Ct. 1083. The plaintiff paid the assessed tax, filed a claim for refund, which was rejected, and brought this suit.

The Government's defense is not based upon the theory on which the tax was assessed and collected. It is based rather upon the theory that the dividend in kind declared by the plaintiff was an assignment of anticipated income made for the purpose of keeping the income out of its hands so that it would not have to pay taxes on it. The receipt by the plaintiff of approximately $60,200 from the sale of the oil from the 18 leases during the remainder of the year 1943 was anticipated. That income would have come to the plaintiff at least as certainly as expected salary would come to an employed person, or expected dividends or interest would come to the holder of stocks or bonds. The question then is whether it is tolerable, when an income tax is being imposed upon citizens generally, to permit particular persons to rid themselves of their income and their share of the income tax by assignment of the expected income in advance of its receipt to avoid the tax. Lucas v. Earl, 281 U.S. 111, 50 S.Ct. 241, 74 L.Ed. 731, held that one could not achieve that result by assigning his salary before it was paid. Harrison v. Schaffner, 312 U.S. 579, 61 S.Ct. 759, 85 L.Ed. 1055, held that one entitled to the income from a trust could not escape income taxes by assigning a part of the future income to his children. Helvering v. Horst, 311 U.S. 112, 61 S.Ct. 144, 85 L.Ed. 75, 131 A.L.R. 655, held that an owner of an interest-bearing bond could not, by detaching interest coupons before they were due and giving them to his son, avoid paying an income tax on the interest, when collected, as if it had been paid to him. Helvering v. Clifford, 309 U.S. 331, 60 S.Ct. 554, 84 L.Ed. 788, is instructive on the question of transactions which, without resulting in important economic changes, are engaged in for the purpose of affecting tax liabilities.

In the instant case the plaintiff corporation foresaw that its operations for 1943 would justify it in distributing a dividend to its stockholders. Its stockholders had a right to have that question considered. The corporation did consider it, and decided that it could produce the same economic benefits for the stockholders by having its prospective debtors, the pipe-line companies which were purchasing its oil and paying for it, make their payments to the stockholders instead for so long as was necessary to put the determined amount of money in the hands of the stockholders. In all reality, it was a plain case of the assignment of future income to satisfy a moral and near-legal obligation of the assignor, a transaction without purpose or intended consequences except in relation to income tax liability.

The plaintiff urges that "oil payments" such as were transferred by the plaintiff to its stockholders are property interests. They are, no doubt, valuable rights, and susceptible of ownership, just as the right, after proper assignment, to receive salary to be earned by another was assumed to be in Lucas v. Earl, supra, and as the in-

terest coupons clipped from the bond were in Helvering v. Horst, supra. The property interests conveyed by the plaintiff to its stockholders were unusual, in that the plaintiff, without consideration, expressly relieved the stockholders of the normal burdens of such ownership, the expense of operating and managing the leases. This arrangement would hardly have been made, of course, except for the expectation of the stockholders that they should be paid dividends, or the family and stock ownership situation which made it immaterial except for tax purposes how the proceeds of the soil should be put into the hands of the stockholders.

 Payments received from the production and sale of oil are income, and taxable as such. Burnet v. Harmel, 287 U. S. 103, 53 S.Ct. 74, 77 L.Ed. 199; Helvering v. Twin Bell Oil Syndicate, 293 U.S. 312, 55 S.Ct. 174, 79 L.Ed. 383. These cases also show that the wasting nature of the subject matter is compensated for by the allowance of a statutory percentage depletion as a deduction from such income. The anticipated receipt by the plaintiff, then, from the production and sale of the oil being the anticipated receipt of taxable income, its assignment before receipt was in all respects comparable to the assignment of salary, or income from a trust, or interest on a bond, considered in the cases cited above.

The plaintiff urges that there was something advantageous to it in a memorandum opinion of the General Counsel of the Bureau of Internal Revenue, G.C.M. 22, 730, 1941—1 Cum.Bull. 214 issued in 1941, which was changed by a later opinion 24, 849, 1946—1 Cum.Bull. 66 issued in 1946, which change, however, was expressly made nonretroactive by specific Bureau Ruling, I. T. 3895, 1948—1 Cum.Bull. 39, and hence, should not have been applied to the plaintiff's 1943 transactions. We have studied these opinions and do not find anything in the analyses made there which would indicate that the taxing authorities intended to permit the owner of income-producing property to escape paying taxes by assigning the right to receive the income. Such a view would have contradicted all the decisions of the Supreme Court of the United States which had ever dealt with the problem.

Our conclusion is that the plaintiff's petition should be dismissed. It is so ordered.