TELEPHONE DIRECTORY ADVERTISING COMPANY and C. Harry Chisholm, Charles F. Welsh, and Rose J. Mertz, as Directors and Liquidating Trustees of Telephone Directory Advertising Company

v.

The UNITED STATES.

No. 560–53.

United States Court of Claims.

July 12, 1956.

Joseph H. Sheppard, Washington, D. C., for the plaintiffs. J. Marvin Haynes, Haynes & Miller, N. Barr Miller, F. Eberhart Haynes, and Oscar L. Tyree, Washington, D. C., were on the briefs.

J. W. Hussey, Washington, D. C., with whom was Asst. Atty. Gen. Charles K. Rice for defendant. Andrew D. Sharpe, Washington, D. C., was on the brief.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and LARAMORE, Judges.

LITTLETON, Judge.

The plaintiffs sue to recover $493,378.-41, with interest, as an overpayment of corporation income and excess profits taxes and interest for the period from August 1, 1950, to October 31, 1950. There are two issues. The first issue is whether the Commissioner of Internal Revenue properly included certain future commissions in the income of the Telephone Directory Advertising Company, a corporation, for its final taxable period. The second issue is whether the Commissioner properly included the proceeds from the sale of certain assets in the income of the Telephone Directory Advertising Company.

The facts relating to the first issue may be summarized as follows: The Telephone Directory Advertising Company (hereinafter referred to as plaintiff) kept its books and filed its tax returns on an accrual method of accounting. The plaintiff filed its corporation tax returns on the basis of fiscal years ending July 31, and filed its final corporation tax return for the taxable period beginning August 1, 1950, and ending October 31, 1950.

The plaintiff, from its inception in 1913 until its liquidation on October 31, 1950, was engaged in the business of selling and scheduling advertising for publication in telephone directories to be issued by the Michigan Bell Telephone Company (hereinafter referred to as Telephone Company) in Detroit and other areas of the State of Michigan. Substantially all its income was derived from that source. The plaintiff was the sole advertising solicitation agent for the Telephone Company.

The advertisers were required by their contract to pay when billed by the Telephone Company a certain amount per month during the life of a directory. Under the contract, dated May 26, 1947, the Telephone Company was required to pay plaintiff specified commissions monthly, limited to the amounts collected from the advertisers. The amounts paid plaintiff monthly were subject to adjustments every six months. This contract was amended on November 5, 1949, to eliminate the six months' adjustment provision and to provide that the commissions should be payable monthly on a gross sales basis. Commissions under both arrangements are involved in this case.

When a directory was issued by the Telephone Company it was assigned a projected or estimated life, but frequently the projected life was cut back or extended because of the exigencies of the telephone business. The average projected life for directories was from ten to twelve months, but the Telephone Company had complete control of the length of time a directory would be outstanding and frequently issues were extended or curtailed by one or two months and in some instances for periods of as long as three, four, seven, or nine months. If the projected life of a directory was cut back, an advertising subscriber was not liable for advertising charges beyond the last month the directory was outstanding, and conversely, when the life of a directory was ex-

tended under his contract a subscriber was liable for advertising charges for the number of additional months added to the original projected life. Subscribers were thus bound by their contracts to pay advertising charges to the Telephone Company only so long as the directory in which their advertising appeared remained in use and the plaintiff was only entitled to commissions on such advertising under the same conditions and circumstances.

When a directory was issued plaintiff would compute the amount of one month's commission thereon and multiply that amount by the number of months in the projected life of the directory. This amount was then reflected in plaintiff's books as *deferred* revenue, but no portion of that sum was taken into income through this entry. At the end of the first month in which a new directory was outstanding and at the end of each following month while such directory was outstanding, plaintiff accrued on its books the monthly portion of the commission it was entitled to receive from the Telephone Company and treated this amount as income accruing at the end of the month for which the entry was made. If the projected life of the directory was changed appropriate entries were made.

The plaintiff paid its individual salesmen each month on the basis of the gross value of sales of advertising made by them. At that time it charged the amounts to a deferred expense account. When a directory was issued and the plaintiff became entitled to receive commissions from the Telephone Company for the advertising sold, plaintiff charged against such commissions each month a pro rata part of the salesmen's commissions which had been set up as deferred expense at the time the advertising was sold.

The plaintiff treated the commissions as accruing as income for tax purposes at the end of each month for which an applicable directory was outstanding and charged a pro rata part of the applicable salesmen's commissions against such in-come. The plaintiff consistently followed this method of reporting its income and expenses from 1931 to the date of its liquidation. This method of accounting clearly reflected plaintiff's income. Except for the three months' period ended October 31, 1950, these returns have always been accepted by the Commissioner insofar as the method of accounting was concerned.

Dissension concerning the terms of the contract arose between the plaintiff and the Telephone Company sometime in 1948. Numerous conferences were held and correspondence was exchanged in an effort to effect a satisfactory renewal contract. The negotiations failed and plaintiff's contract with the Telephone Company expired on October 31, 1950. Termination of the contract resulted in the collapse of plaintiff's business. For this reason the plaintiff completely liquidated and dissoslved on October 31, 1950, and distributed all its assets to its stockholders through duly appointed agents as a liquidating dividend in kind.

On the date of dissolution of plaintiff there remained in its deferred revenue account the sum of $277,565.05 which had not yet accrued as income. This sum represented anticipated commissions on outstanding directories of the Telephone Company to which the plaintiff would have been entitled monthly in the future had it remained in business and had the directories to which such commissions related remained outstanding through their full projected lives. Prior to its dissolution plaintiff had solicited advertising for inclusion in directories which had not yet been issued by the Telephone Company at the date of dissolution. No amount was reflected on its books with respect to commissions on these directories because under its regular method of accounting a book entry was not made until directories were issued. The monthly payments for the directories outstanding on dissolution and those issued by the Telephone Company after dissolution were made to the agents for the stockholders over a period of approximately 18 months.

The Commissioner included in plaintiff's income for the short period August 1 to October 31, 1950, the entire amount of $277,565.05 reflected in its *deferred revenue account* representing anticipated commissions from the directories then outstanding, and in addition included the amount of $635,929.51 representing *anticipated* commissions from directories to be issued in the future. In accordance with plaintiff's regular method of accounting these sums would not have been accrued as income in less than 18 months had it remained in existence. Deduction for expenses paid in connection with these directories were allowed for the short period.

Deficiencies in income and excess profits taxes were assessed, with interest, by the Commissioner, and paid by plaintiffs. Claims for refund were duly filed, rejected, and this suit was timely instituted.

The plaintiffs contend that the Telephone Directory Advertising Company did not realize the commission income in dispute in this case because such income had not accrued at October 31, 1950; that its accrual method of accounting properly reflected its income for the short period; that in the circumstances the Commissioner lacked authority under the law to change its accounting method, and therefore the taxes were improperly collected.

The defendant contends that this income was properly taxed to the plaintiff because plaintiff earned the income and should not be allowed to escape tax by dissolving and distributing the right to receive that income to the stockholders. The applicable sections of the Code are set forth below.[1]

At the outset the defendant asserts that plaintiff employed a hybrid system of accounting in keeping its books and reporting its income for tax purposes. The plaintiff was on an accrual method of accounting. The plaintiff's method of accounting more accurately reflects income than does the pure tax accrual method because the income is matched with the expenses incurred in earning it. The only difference between plaintiff's method of accounting and the pure accrual method as recognized for tax purposes is that plaintiff did not deduct its *expenses* when "incurred," but rather deferred them until the income earned from the sales accrued. Insofar as the accrual of the income was concerned, which is the question in dispute here, plaintiff followed the usual accrual of income rule. It accrued the income when it first had an unconditional, fixed and determined right to a reasonably ascertainable amount. See Lucas v. North Texas Lumber Co., 281 U.S. 11, 50 S.Ct. 184, 74 L.Ed. 668; Spring City Foundry Co. v. Commissioner, 292 U.S. 182, 54 S.Ct. 644, 78 L.Ed. 1200, and Breeze Corporations, Inc., v. United States, 117 F.Supp. 404, 127 Ct.Cl. 261, and the cases collected therein.

---

1. "§ 41. *General rule*

"The net income shall be computed upon the basis of the taxpayer's annual accounting period (fiscal year or calendar year, as the case may be) in accordance with the method of accounting regularly employed in keeping the books of such taxpayer; but if no such method of accounting has been so employed, or if the method employed does not clearly reflect the income, the computation shall be made in accordance with such method as in the opinion of the Commissioner does clearly reflect the income. * * *" 26 U.S.C.1946 ed., sec. 41.

"§ 42. *Period in which items of gross income included—(a) General rule.*

"The amount of all items of gross income shall be included in the gross income for the taxable year in which received by the taxpayer, unless, under methods of accounting permitted under section 41, any such amounts are to be properly accounted for as of a different period. * * *" 26 U.S.C.1946 ed., sec. 42.

"§ 47. *(g) Returns where taxpayer not in existence for twelve months.*

"In the case of a taxpayer not in existence during the whole of an annual accounting period ending on the last day of a month, or, if the taxpayer has no such annual accounting period or does not keep books, during the whole of a calendar year, the return shall be made for the fractional part of the year during which the taxpayer was in existence." 26 U.S.C.1946 ed., sec. 47.

■ The plaintiff employed the same consistent accrual accounting method during the short period involved in this case. The findings of the commissioner of this court show that plaintiff's method of accounting during this short period clearly reflected income for that period. The findings also show that plaintiff did not have a fixed and determined right to receive the anticipated commissions involved in this case on October 31, 1950, the date of its dissolution. The plaintiff under its contract was not entitled to receive the commission on the advertising sold until the end of the month that the advertising appeared outstanding in the telephone directories. The advertisers were not obligated to pay the Telephone Company until that time and the Telephone Company was not obligated to pay plaintiff until that time. Also the amount that it would be entitled to receive could not be determined with reasonable accuracy because of the curtailments and extensions which became necessary in the projected life of the directories due to the exigencies of the telephone business. All the commissions involved in this case accrued and were paid after the dissolution of plaintiff and therefore could not properly be accrued during the short taxable period. See cases collected in Breeze Corporations, Inc., v. United States, supra.

■ Under the well-settled annual accounting of revenues and expenses concept the Commissioner does not have the authority to allocate income to a taxable year other than the year in which a fixed right to receive a reasonably ascertainable amount exists. The Supreme Court in discussing the Commissioner's authority to shift income from one year to another year, stated in Security Flour Mills Co. v. Commissioner, 321 U.S. 281, 64 S.Ct. 596, 88 L.Ed. 725:

"* * * But we think it was not intended to upset the well understood and consistently applied doctrine that cash receipts or matured accounts due on the one hand, and cash payments or accrued definite obligations on the other, should not be taken out of the annual accounting system and, for the benefit of the Government or the taxpayer, treated on a basis which is neither a cash basis nor an accrual basis, because so to do would, in a given instance, work a supposedly more equitable result to the government or to the taxpayer. * * *" 321 U.S. at pages 285–286, 64 S.Ct at page 598.

"* * * The uniform result has been denial both to government and to taxpayer of the privilege of allocating income or outgo to a year other than the year of actual receipt or payment, or, applying the accrual basis, the year in which the right to receive, or the obligation to pay, has become final and definite in amount. * * *" 321 U.S. at pages 286–287, 64 S.Ct. at page 599.

Under neither the cash nor accrual nor any other accepted accounting method could the Commissioner include 21 months of income within a three-month period.

The defendant asserts that although plaintiff's system of accounting may have accurately reflected income if it had remained in existence, the liquidation with the contractual right to future commissions changed the situation. The Treasury regulation in effect during 1950 specifically provided that no gain or loss is realized by a corporation from the mere distribution of its assets in kind in complete liquidation, with the exception of installment sales. Treasury Regulation 111, sec. 29.22(a)–20. The language of this regulation was approved by the Supreme Court in United States v. Cumberland Public Service Corp., 338 U.S. 451, 70 S.Ct. 280, 94 L.Ed. 251, and has been codified as section 336 of the 1954 Code, 26 U.S.C.A. § 336. Inasmuch as plaintiff did not have a fixed determined right to receive payment of a reasonably ascertainable amount on October 31, 1950, for the services that it had performed, the contractual right to receive payment upon the genuine condition that the directories

remain outstanding represented unrealized income and was an asset distributed to the stockholders. We see nothing in the tax law that requires a corporation, which has employed an accrual method of accounting that properly reflected its income over a period of years, to remain in existence for the sole purpose of paying taxes after it is forced to discontinue business.

The defendant makes a general argument that plaintiff had performed the services and had done everything to earn the commissions and therefore it should be taxed on the commissions. The defendant relies on the assignment of income cases. Lucas v. Earl, 281 U.S. 111, 50 S.Ct. 241, 74 L.Ed. 731; Burnet v. Leininger, 285 U.S. 136, 52 S.Ct. 345, 76 L.Ed. 665; Helvering v. Horst, 311 U.S. 112, 61 S.Ct. 144, 85 L.Ed. 75; Helvering v. Eubank, 311 U.S. 122, 61 S.Ct. 149, 85 L.Ed. 81; Harrison v. Schaffner, 312 U.S. 579, 61 S.Ct. 759, 85 L.Ed. 1055; Commissioner of Internal Revenue v. Sunnen, 333 U.S. 591, 68 S.Ct. 715, 92 L.Ed. 898. The case of United States v. Joliet & Chicago Railroad Co., 315 U.S. 44, 62 S.Ct. 442, 86 L.Ed. 658, may be added to these cases. The same argument was presented to the court in United States v. Horschel, 9 Cir., 205 F. 2d 646, 648, and rejected. In the Horschel case the corporation, which was on a cash basis, had liquidated in 1943, and distributed its assets to its stockholders. Some of the assets were sold or collected in 1944 and the Commissioner contended that the income from these assets was already earned by the corporation and had been anticipatorily assigned to the stockholders. The court pointed out that the anticipatory assignment of income cases rests on the proposition that the income was "anticipated, used and realized before it was earned." The income is taxed to the assignor because he retains the control over the source that earns the income and realizes the income and enjoys the economic benefit by the assignment because it is in satisfaction of his or its wants. If complete control over the source of the income is relinquished, the principle is inapplicable. Blair v. Commissioner, 300 U.S. 5, 57 S.Ct. 330, 81 L.Ed. 465. In the instant case the plaintiff did not have any control over the asset that produced the income after its distribution to the stockholders on October 31, 1950. The plaintiff did not realize the income because it was not in existence when it accrued and was paid.

The case of Commissioner of Internal Revenue v. Henry Hess Co., 9 Cir., 210 F.2d 553, involved substantially the same question that is involved in this case under analogous facts. In the Hess case the Government requisitioned, on November 12, 1942, a vessel owned by the corporation without a determination as to value. On November 13, 1942, the corporation, which was on an accrual basis, dissolved and distributed its claim for the undetermined value of the vessel to its stockholder which, itself, a few days later dissolved and distributed the claim to its stockholders. A dispute ensued as to the value of the vessel which was not settled until in 1944. Partial payment was made in 1943 and final payment was made in 1944. The Commissioner sought to tax the profits on the sale to the corporation in 1942, 1943 and/or 1944. The court held for the taxpayers stating that the accrual of profits on the sale before liquidation was prevented because of the controversey as to value and that no accrual could be made to the corporation after liquidation because the corporation was not in existence. See also Novo Trading Corp. v. Commissioner, 2 Cir., 113 F.2d 320; Motion Picture Corp. of Calif. v. Commissioner, 1942 P–H BTA–TC memo. Dec., para. 42,110; Lancaster v. Commissioner, 11 T. C. M. 1108. Cf. J. Ungar, Inc. v. Commissioner, 26 T. C. —— where the court held, under facts substantially similar to the instant case, that the income was taxable to the corporation because the corporation was still in the process of liquidation.

The defendant's reliance on the completed contract cases, represented by Jud Plumbing & Heating, Inc., v. Commis-

sioner, 5 Cir., 153 F.2d 681, and Standard Paving Co. v. Commissioner, 10 Cir., 190 F.2d 330, certiorari denied, 342 U.S. 860, 72 S.Ct. 87, 96 L.Ed. 647, is misplaced. In those cases the Commissioner properly accrued the income to the corporations that were using the completed contract method, which allows the postponement of accrued income, because it more accurately reflected income. In those cases the accrual was made only to the date of liquidation. In all those cases the right to receive the income was fixed and definite and in some instances the income had already been received.

We conclude for the reasons set out above that the Commissioner improperly included the future commissions in the income of Telephone Directory Advertising Company and that plaintiffs are entitled to recover the resulting taxes and interest.

The facts relating to the second issue are fully set forth in the commissioner's findings and may be briefly summarized as follows:

When it became apparent that the Telephone Company would not renew its contract a series of meetings was held by the officers and stockholders of plaintiff for the purpose of formulating a plan of dissolution. A plan of dissolution was adopted by the stockholders on September 12, 1950, that contemplated the dissolution of plaintiff on October 31, 1950, and the distribution of all its assets to the stockholders through their agents as of November 1, 1950. The agents for the stockholders negotiated a contract with the Telephone Company in which it was agreed that the agents for the stockholders would sell the materials and records used in selling directory advertising, including compilation records, basic contracts with customers, customer correspondence, contest letters, promotional material and advertising patronage records, etc., and to assign all its leases to the Telephone Company when they were received in liquidation on November 1, 1950, for the sum of $100,000. The assets were transferred pursuant to the contract. The Commis-

sioner included the $100,000 in the income of plaintiff and collected the resulting tax thereon.

The defendant contends that plaintiff was required under the contract dated May 26, 1947, to sell these assets to the Telephone Company for $100,000 and therefore the sale was in reality made by plaintiff. The plaintiff contends that the provisions relating to termination referred to in the May 26, 1947, contract and the sale required under that contract are not applicable because the contract was not terminated under those provisions, but rather under the May 5, 1949, amendment which provided for automatic expiration on November 30, 1950.

The record shows that the sale of these assets was formally and in fact handled completely by the agents for the stockholders. Unless the plaintiff was obligated to sell and the Telephone Company to buy these assets for $100,000 under the May 26, 1947, agreement, as amended, the plaintiff comes squarely within the holding of the Supreme Court in United States v. Cumberland Public Service Corporation, supra, where it was held under similar circumstances that a sale made in fact by the stockholders was not taxable to the corporation.

The pertinent paragraphs of the 1947 agreement are set forth in full in finding 8. Paragraph Twenty-First (relating to period of agreement) provided that the agreement should remain in effect until cancelled by either party with notice of cancellation being given not later than four months prior to the expiration date of the Detroit Classified Directory then in service. Paragraph Twenty-Second (relating to settlement upon termination of agreement) provided that " * * * The Advertising Company agrees to turn over to the Telephone Company its complete compilation records," etc. Paragraph Twenty-Third (relating to obligations of the parties if agreement terminated by the Telephone Company and Agency Plan simultaneously eliminated) provided that "Upon the termination of this agreement by the Telephone Company, under the provisions of paragraph

Twenty-First hereof, and the transfer at that time of the Advertising Company's operations to the Telephone Company, the Advertising Company will render every assistance possible in effecting a transfer satisfactory to the Telephone Company." It further provided that upon completion of such a transfer the Telephone Company would pay $100,000 to the Advertising Company. Paragraph Twenty-Fourth (relating to violation and forfeiture) provided that if the contract was cancelled for cause the Telephone Company should nevertheless be obligated "to pay the Advertising Company $100,000 under the conditions outlined in paragraph Twenty-Third" for a satisfactory transfer of its operations to the Telephone Company.

The amendment to this contract made on November 5, 1949, provided that the contract as amended should automatically expire November 30, 1950, but that negotiation should be resumed January 16, 1950, for the purpose of concluding a continuing agreement. The contract was actually terminated on October 31, 1950, by mutual consent of the parties because of difficulties with printing schedules.

■ The record shows that plaintiff's contract with the Telephone Company was not terminated under paragraph Twenty-Third, but rather under the terms of the amendment to the contract made on November 5, 1949, which provided that the contract should automatically expire on November 30, 1950, unless renewed. Paragraph Twenty-Third was not applicable also because it referred to . the payment of $100,000 for the satisfactory transfer of the good will and operating personnel to the Telephone Company and not to the records and leases which were in fact sold. This reflects the interpretation of both parties as indicated by the terms of the contracts, their conduct with respect thereto, including correspondence between the parties and between the Internal Revenue Service and the Telephone Company. The agents for the stockholders negotiated the sale of the records and leases (which were not referred to in the 1947 contract at all) to the Telephone Company and received payment and a receipt therefor. We conclude, therefore, that the Commissioner improperly included the proceeds from the sale of these assets in the income of plaintiff and that plaintiff is entitled to recover the resulting taxes and interest.

The plaintiff is entitled to recover $493,378.41, with interest as provided by law, and judgment will be entered accordingly.

It is so ordered.

JONES, Chief Judge, and LARAMORE, MADDEN and WHITAKER, Judges, concur.