COMMISSIONER OF INTERNAL
REVENUE, Petitioner,

v.

A. J. SLAGTER, Jr., and Lora May
Slagter, Respondents.

COMMISSIONER OF INTERNAL
REVENUE, Petitioner,

v.

Estate of Earl B. PAULSON, Deceased,
etc., Respondent.

Nos. 11696, 11697.

United States Court of Appeals
Seventh Circuit.

Nov. 29, 1956.

Charles K. Rice, Asst. Atty. Gen., Melva M. Graney, Attorney, Tax Div., U. S. Dept. of Justice, Washington, D. C., Hilbert P. Zarky, Dept. of Justice, Washington, D. C., for petitioner.

Fenelon Boesche, Tulsa, Okl., Williams, Boesche & McDermott, Tulsa, Okl., of counsel, for respondents.

Before DUFFY, Chief Judge, and LINDLEY and SCHNACKENBERG, Circuit Judges.

LINDLEY, Circuit Judge.

The Commissioner of Internal Revenue seeks reversal of the decision of the Tax Court holding that the income taxes here involved should be computed as capital gain taxes, as respondents claim, and not as ordinary income subject to an allowance for depletion, as petitioner contends.

The essential facts follow. A. J. Slagter, Jr., and Lora May Slagter, husband and wife, and Earl B. Paulson, a single man, who died testate on March 21, 1952, were, as partners, in 1948, the owners of a number of oil and gas leases, producing oil thereunder. An allied corporation, the Slagter Oil and Grease Company, held certain interests in the leases. On August 16, 1948, the partners and the corporation executed, in favor of Ashland Oil & Refining Company, an instrument whereby they assigned to Ashland "an undivided 60% of all the oil, gas and casinghead gas in and under and which may be produced, saved and marketed from and after June 1, 1948" from the leases. The agreement provided that the rights of the assignee thereunder would continue until it had "received from the net proceeds from the sale of such oil, free and clear of all costs and expenses * * the sum of Five Hundred Thirteen Thousand Five Hundred and No/100 Dollars ($513,500.00), based on the prevailing posted market price regularly paid by principal purchasers of crude oil in the general area of said leases * * *," and, further, that "If and when Assignee * * * shall have received the full sum of Five Hundred Thirteen Thousand Five Hundred and No/100 Dollars * * the Assignee's interests and rights * * shall thereupon cease and terminate * * * and the interest herein assigned shall ipso facto revert to and vest in the Assignors, their heirs, successors and assigns."

At the time of the execution of this agreement the partnership was badly in need of funds, and resort was had to the contract in order to obtain cash in advance of actual production. Upon execution of the assignment, Ashland advanced to the assignors $501,000, apportioned among them according to their respective interests. Under the instrument the partnership was to continue to operate the leases and to produce and sell the oil therefrom. When sold 60% of the purchase price received was payable to the assignee, to apply in liquidation of the specified amount of $513,500. It was estimated that to realize the entire sum from 60% of the production would require a working period of 7 years and 10 months; actually, however, the entire amount was realized and paid to Ashland by November 30, 1953, or within 5 years 3½ months.

The respondents, in their respective income tax returns for 1948, reported a long term capital gain realized from the "sale" of the oil payment to Ashland. The Commissioner determined deficiencies against them, based on the premise that the moneys paid to Ashland represented not gain from property sale, but ordinary income of respondents, realized from their production and sale of oil. The Tax Court refused to support the Commissioner and ordered the tax computed on the basis of a property gain.

In this review, the Commissioner contends that the assignment did not amount to a sale of property; that assignee received, not an absolute title but a defeasible one, reverting to the assignors when the sum advanced by Ashland had been fully repaid from the oil produced and sold; that, if the transaction amounted to an actual sale, it was sale of partnership property held for sale to customers in the ordinary course of business; that, at all events, the assignment did not constitute a sale of property or the money therefrom a gain on property sold, but merely an assignment of anticipatory income, in consideration of the advancement of $513,500, and that the income so assigned was not sold to Ashland but was in fact repaid to the latter to reimburse it for its advancement and thus remained at all times an economic benefit to the assignors taxable as their ordinary income.

In disposing of the issues we think that any effort directed to defining various technical terms as interpreted by state courts would be wholly beside the point. The decisive question is whether the transaction, when viewed in the light of federal legislation, amounted to a sale of capital assets or merely to an assignment of anticipatory income for the purpose of repaying to Ashland the sum it had advanced. We are concerned only with the federal question of what is the proper measure of the tax,—not with State decisions as to property rights. Burnet v. Harmel, 287 U.S. 103, at page 110, 53 S.Ct. 74, at page 77, 77 L.Ed. 199.

In short, we think that the taxpayers have not presented a transaction of sale within the meaning of Section 117 of the Internal Revenue Code, 26 U.S.C.A. § 117. When we remember the elementary facts the situation is not at all complicated. The partnership, badly in debt, needed one-half million dollars to continue its operation of producing and selling oil. It found that it could obtain from Ashland an advancement of the required amount for repayment of which Ashland would be willing to take an assignment to it of 60% of the net operating proceeds realized by the partnership from the production on 72 leases, through some 120 producing wells. In other words, all moneys to be delivered to Ashland were to be produced by taxpayers' operations. As a result the entire advancement was repaid in shorter time than had been expected, and the assignment, thereupon "ipso facto", by its own terms, came to an end. These moneys then, were, in the absence of the assignment, the income of respondents. Their assignment and the agreement to pay them to Ashland in repayment of the $501,000 advanced by Ashland, obviously redounded to the assignors' economic benefit and advantage and constituted ordinary income to them.

Various courts have, from time to time, discussed the nature and effects of assignments of anticipatory income. Thus, in Harrison v. Schaffner, 312 U.S. 579, 61 S.Ct. 759, 85 L.Ed. 1055, the Supreme Court held that one entitled to the income from a trust could not escape income taxes by assigning the future income for a limited period of his children; and, in Helvering v. Horst, 311 U.S. 112, 61 S.Ct. 144, 85 L.Ed. 75, that the owner of an interest-bearing bond was not excused, by detaching interest coupons before they were due and giving them to his son, from paying an income tax on the interest. See also, Helvering v. Eubank, 311 U.S. 122, 61 S.Ct. 149, 85 L.Ed. 81; Burnet v. Leininger, 285 U.S. 136, 52 S.Ct. 345, 76 L.Ed. 665; Helvering v. Clifford, 309 U.S. 331, 60 S.Ct. 554, 84 L.Ed. 788; Commissioner of Internal Revenue v. Sunnen, 333 U.S. 591, 68 S.Ct. 715, 92 L.Ed. 898; Galt v. Commissioner, 7 Cir., 216 F.2d 41, at page 46, certiorari denied 348 U.S. 951, 75 S.Ct. 438, 99 L.Ed. 743; and Hulbert v. Commissioner, 7 Cir., 227 F.2d 399. In Lucas v. Earl, 281 U.S. 111, 50 S.Ct. 241, 74 L.Ed. 731, the court held that one could not achieve freedom from liability for taxation by assigning his salary before it was paid. See also Rudco Oil & Gas Co. v. United States, 82 F.Supp. 746, 113 Ct.Cl. 206; Commissioner of Internal Revenue v. Hawn, 5 Cir., 231 F.2d 340. In this connection the language of the Supreme Court in Harrison v. Schaffner, 312 U.S. 579 at page 581, 61 S.Ct. 759, at page 761, 85 L.Ed. 1055, is aptly pertinent: "Section 22(a) of the 1928 Revenue Act provides, ' "Gross income" includes gains, profits, and income derived from * * * interest, rent, dividends, securities, or the transaction of any business carried on for gain or profit, or gains or profits and income derived from any source whatever'. By §§ 161(a) and 162(b) the tax is laid upon the income 'of any kind of property held in trust', and income of a trust for the taxable year which is to be distributed to the beneficiaries is to be taxed to them 'whether distributed to them or not'. In construing these and like provisions in other revenue acts we have uniformly held that they are not so much concerned with the refinements of title as with the actual command over the income which is taxed and the actual benefit for which the tax is paid. See

Corliss v. Bowers, 281 U.S. 376, 50 S.Ct. 336, 74 L.Ed. 916; Lucas v. Earl, supra; Helvering v. Horst, supra; Helvering v. Eubank, supra; Helvering v. Clifford, supra. It was for that reason that in each of those cases it was held that one vested with the right to receive income did not escape the tax by any kind of anticipatory arrangement, however skillfully devised, by which he procures payment of it to another, since, by the exercise of his power to command the income, he enjoys the benefit of the income on which the tax is laid."

And the Court said in Helvering v. Horst, 311 U.S. 112 at pages 116 and 117, 61 S.Ct. 144, at page 147, 85 L.Ed. 75: "Underlying the reasoning in these cases is the thought that income is 'realized' by the assignor because he, who owns or controls the source of the income, also controls the disposition of that which he could have received himself and diverts the payment from himself to others as the means of procuring the satisfaction of his wants. The taxpayer has equally enjoyed the fruits of his labor or investment and obtained the satisfaction of his desires whether he collects and uses the income to procure those satisfactions, or whether he disposes of his right to collect it as the means of procuring them. * * * Such a use of his economic gain, the right to receive income, to procure a satisfaction which can be obtained only by the expenditure of money or property, would seem to be the enjoyment of the income whether the satisfaction is the purchase of goods at the corner grocery, the payment of his debt there, or such non-material satisfactions as may result from the payment of a campaign or community chest contribution, or a gift to his favorite son. Even though he never receives the money he derives money's worth from the disposition of the coupons which he has used as money or money's worth in the procuring of a satisfaction which is procurable only by the expenditure of money or money's worth."

From these and other decisions it is clear that the courts reason that income is still taxable to an assignor notwithstanding the fact that a complete transfer in good faith has been made to another. It is immaterial whether the assignment is in the form of a grant, conveyance or gift; if the economic benefit is that of the grantor, the income remains that of the assignor. No legerdemain can make of the assignment in such situation a sale of capital assets. As said in Helvering v. Horst, 311 U.S. 112, at page 118, 61 S.Ct. 144, at page 147: "The power to dispose of income is the equivalent of ownership of it. The exercise of that power to procure the payment of income to another is the enjoyment and hence the realization of the income by him who exercises it." So, here, the taxpayers owned and controlled the right to produce oil and gas on the leases and to receive and keep the money realized from the operation of the wells, for their own purposes; when they secured an advancement of one-half million dollars and agreed that that should be repaid to the assignee from their own income, they remained liable to pay taxes upon that income.

The production of oil and gas is an income-producing operation similar to a manufacturing business carried on on land. Anderson v. Helvering, 310 U.S. 404, at page 408, 60 S.Ct. 952, at page 954, 84 L.Ed. 1277, and cases there cited. The assignment here was similar in effect to a mortgage upon real estate or a manufacturing plant, conveying absolute title to the property to the mortgagee, but providing that upon payment of the amount stipulated it shall come to an end. If the mortgage be upon a factory, even though there is no personal liability upon the part of the assignor, if the assignor pledges the net proceeds of the operation of that factory, when those profits are realized and paid to the mortgagee, they are paid for the economic benefit of the mortgagor. They are his income, taxable as such.

It is suggested by the taxpayers that there was no promise upon the part of the partnership to repay the funds. We think that circumstance does not weaken

the effect of the assignment as a promise to pay the income of the assignors to the assignee. It is not alone the personal promise of the assignor to repay that determines the relationship of the assignor to the income realized.

■ We conclude that the income in question was taxable as ordinary income of the taxpayers as it accumulated and was paid from time to time to Ashland, and that the tax liabilities should be computed for the years in question upon the amounts of income thus realized and paid to Ashland in the respective periods. The judgment is reversed and the cause remanded for proceedings in accord with the announcements herein contained.