J. C. WILLIAMSON, Transferee of Williamson Well Service, Inc., a Dissolved Corporation

v.

UNITED STATES.

No. 86–59.

United States Court of Claims.

July 19, 1961.

Edward L. Wilson, Dallas, Tex., for plaintiff.

Eugene Emerson, Washington, D. C., with whom was Louis F. Oberdorfer, Asst. Atty. Gen., for defendant. James P. Garland and Lyle M. Turner, Washington, D. C., were on the brief.

JONES, Chief Judge.

This is an action brought to recover a sum which was paid under protest as an assessed deficiency in Federal income taxes for the period November 1, 1954, to August 22, 1955. The deficiency was assessed against the plaintiff as transferee of the assets of the Williamson Well Service, Inc. The parties are agreed on the facts. The plaintiff has moved for judgment on the pleadings; the defendant has filed a cross motion to dismiss. The question presented is whether a cash method corporation which is presently entitled to receive income for services rendered can escape taxation through liquidation whereby in advance of payment it gives away to its stockholders the right to receive this income.

The plaintiff, J. C. Williamson, organized the corporation, Williamson Well Service, Inc., under the laws of the State

of Texas on January 2, 1953. The corporation was engaged in the business of servicing oil and gas wells. Its services were performed on a contract basis; it derived all of its income from these services, and it did not engage in any other business. The corporation maintained no inventories and leased most of the fixed assets used in the business.

The corporation kept its books on the cash receipts and disbursements method of accounting and reported its income and expenses on that basis for Federal income tax purposes. Except for the corporation's failure to include in its final return as taxable income certain accounts receivable of $192,052.08 the Commissioner of Internal Revenue never objected to the corporation's method of accounting or method of reporting its income for Federal income tax purposes.

On July 25, 1955, the plaintiff, as sole stockholder, duly authorized the liquidation and dissolution of the corporation. Under the terms of the liquidation, the plaintiff received all of the corporate properties, including accounts receivable of $192,052.08, in consideration for all of the corporate stock held by him. The accounts receivable of $192,052.08 evidenced amounts due the corporation, but not paid, for services rendered by the corporation in full performance of various well-servicing contracts prior to the date of distribution. The corporation was dissolved on August 22, 1955.

Following the dissolution, the plaintiff collected all but $2,089.47 of the accounts receivable assigned to him. The plaintiff did not perform any services individually for the debtors who paid the distributed accounts.

In the corporation's final income tax return none of the accounts receivable was reported as income, although undoubtedly the expenses of performing the contracts from which the accounts receivable arose were taken as deductions. Upon audit of the corporation's final tax return covering the period November 1, 1954, to August 22, 1955, the Commissioner increased the corporation's income for the final period by the amount of $192,052.08. In making his ruling, the Commissioner relied upon § 446 of the Internal Revenue Code of 1954, 26 U.S.C. (I.R.C.1954) § 446, which provides that if the taxpayer's method of accounting "does not clearly reflect income, the computation of taxable income shall be made under such method as, in the opinion of the Secretary or his delegate, does clearly reflect income." Plaintiff paid the Commissioner's asserted deficiency plus interest thereon as transferee of the corporation.

In the individual income tax return filed by the plaintiff and his wife for the calendar year 1955 showing his gain on the liquidation and dissolution of the corporation, the plaintiff included the accounts receivable of $192,052.08 at face value among the assets he received in exchange for his capital stock.

On June 24, 1958, the plaintiff, as transferee of the corporation, filed a timely claim for refund with the Commissioner. The claim was disallowed in full and this suit was filed.

Through the years, transfers of money and property between related corporations or between corporations and individual stockholders have produced an entire series of tax problems for the courts and the Congress. When these transfers take the form of dividends in kind and when subsequent to distribution the property is sold or otherwise converted into money by the stockholders the problems and the solutions become highly complex. Twice in recent years the Supreme Court has addressed itself to one aspect of the general problem in determining whether sales of corporate assets following distribution should realistically be attributed to the stockholders or to the corporation. Commissioner of Internal Revenue v. Court Holding Co., 1945, 324 U.S. 331, 65 S.Ct. 707, 89 L.Ed. 981; United States v. Cumberland Public Service Co., 1950, 338 U.S. 451, 70 S.Ct. 280, 94 L.Ed. 251 affirming 1949, 83 F.Supp. 843, 113 Ct.Cl. 460. Other courts have tested completed dividend transactions under the "business purpose" doctrine of Gregory v.

Helvering, 1935, 293 U.S. 465, 55 S.Ct. 266, 79 L.Ed. 596, when it appeared that distributions of property were sham transactions made only to avoid taxes. Commissioner of Internal Revenue v. Transport Trading & Terminal Corp., 2 Cir., 1949, 176 F.2d 570. This court has decided related problems. American Telegraph & Cable Co. v. United States, 1925, 61 Ct.Cl. 326, certiorari denied, 1926, 271 U.S. 660, 46 S.Ct. 473, 70 L. Ed. 1137; Guinness v. United States, 1947, 73 F.Supp. 119, 109 Ct.Cl. 84; Rudco Oil & Gas Co. v. United States, 1929, 82 F.Supp. 746, 113 Ct.Cl. 206; Cumberland Public Service Co. v. United States, supra; Telephone Directory Advertising Co. v. United States, 1956, 142 F.Supp. 884, 135 Ct.Cl. 670.

The question presented by the case at bar is yet another aspect of the over-all problem, the question being whether the fact of liquidation prior to the actual collection of the accounts receivable prevents their being realized by and taxed to the corporation even though the corporation itself earned the money and fully perfected its right to receive the money prior to liquidation.

The resolution of this problem must start with the decision of the Supreme Court in General Utilities & Operating Co. v. United States, 1935, 296 U.S. 200, 56 S.Ct. 185, 80 L.Ed. 154, a case which concerned the distribution by a corporation of appreciated stock as a dividend in kind to its stockholders. Relying on United States v. Kirby Lumber Co., 1931, 284 U.S. 1, 52 S.Ct. 4, 76 L.Ed. 131, the Commissioner declared a taxable gain to the utility corporation upon the distribution of the stock in payment of a dividend. The Commissioner's theory was that the declaration of the dividend created an indebtedness of the corporation to its stockholders and the discharge of that liability by the delivery of property costing less than the amount of the debt constituted income to the corporation. The Board of Tax Appeals and the Court of Appeals upheld the Commissioner. The Supreme Court reversed, stating that the corpora-

tion had neither sold assets, discharged an indebtedness, nor realized taxable gain on the distribution among its stockholders of the appreciated stock as a dividend. The case was generally thought to stand for the proposition that no gain or loss is realized by a corporation on the distribution of property as a dividend.

Thereafter, in Helvering v. Horst, 1940, 311 U.S. 112, 61 S.Ct. 144, 85 L.Ed. 75, the Supreme Court was confronted with the situation where an individual had detached interest coupons from some negotiable bonds shortly before their due date and had given them to his son. The donee in the same year collected the coupons at maturity. The Commissioner ruled that the interest coupons were taxable to the *donor* in the year when paid even though the donor kept his books on the cash receipts basis and had never received the interest payments in cash. The Supreme Court upheld the Commissioner and reiterated the famous horticultural aphorism of Justice Holmes from Lucas v. Earl, 1930, 281 U.S. 111, 50 S.Ct. 241, 74 L.Ed. 731, to the effect that "the fruit is not to be attributed to a different tree from that on which it grew." The Court in Horst said that the "power to dispose of income is the equivalent of ownership of it. The exercise of that power to procure the payment of income to another is the enjoyment and hence the realization of the income by him who exercises it." Furthermore, the *"dominant purpose of the revenue laws is the taxation of income to those who earn or otherwise create the right to receive it"* and this purpose cannot *"be escaped by 'anticipatory arrangements * * * however skilfully devised' to prevent the income from vesting even for a second in the donor."* [Emphasis supplied.] [311 U.S. at pages 118, 119, 120, 61 S.Ct. at page 147.]

The Commissioner seized upon the Horst doctrine as a means of limiting the application of the General Utilities rule. In Commissioner of Internal Revenue v. First State Bank of Stratford, 5 Cir., 1948, 168 F.2d 1004, 7 A.L.R.2d 738, a bank, prior to 1942, had charged off cer-

tain notes as worthless, the deductions producing a tax benefit. When it appeared in 1942 that the notes would be paid, the bank declared a dividend in kind of the notes and assigned them to its stockholders. The Commissioner successfully included in the bank's income for 1942 the amounts collected by the stockholders during the year on the notes. The court held that the dividend, in effect, represented an anticipatory assignment of potential income since the notes when collected would have been ordinary income to the bank. The court said:

> "The avoidance of taxes may be perfectly legitimate, but it cannot be done by the anticipatory assignment of notes representing income, as a dividend in kind, and the subsequent collection of said notes by the assignees. * * *

> "The distinction between General Utilities v. Helvering, supra, and this case lies in the difference in the character of the respective properties distributed as dividends in kind; one represented a capital asset, the other represents income. In the former, the fruit was on the tree; in the latter, the tree itself represents fruit of prior years that was not taxed. * * * " 168 F.2d at page 1009.

■ It was against this background of litigation that the Congress passed §§ 311 and 336 of the 1954 Internal Revenue Code. Section 311(a) is as follows:

> "§ 311. Taxability of corporation on distribution
> "(a) General rule.—Except as provided in subsections (b) and (c) of this section and section 453(d), no gain or loss shall be recognized to a corporation on the distribution, with respect to its stock, of—
> "(1) its stock (or rights to acquire its stock), or
> "(2) property." [26 U.S.C. (I.R. C.1954) § 311.]

This section appears to state flatly that except as provided for in certain subsec-

tions with which we are not here concerned, a dividend distribution cannot result in gain or loss to the corporation. But the Senate Finance Committee emphatically qualified this position as follows:

> "Your committee does not intend, however, through subsection (a), to alter existing law in the case of distributions of property, which has appreciated or depreciated in value, where such distributions are made to persons other than shareholders or are made to shareholders in a capacity other than that of a shareholder. * * * *Likewise your committee does not intend to change existing law with respect to attribution of income of shareholders to their corporation as exemplified for example in the case of Commissioner v. First State Bank of Stratford (168 F.2d 1004, cert. den. 335 U.S. 867, 69 S.Ct. 137 [93 L.Ed. 412])*."
> [Italics supplied.] Sen.Rep.No.1622, 83d Cong., 2d Sess. 247 (1954), U.S. Code Cong. and Adm.News 1954, p. 4884.

Section 311, however, does not govern the instant case directly because the Congress passed a companion section, § 336, which relates more specifically to corporate distributions in partial or complete liquidation. It is as follows:

> "§ 336. General rule
> "Except as provided in section 453 (d) (relating to disposition of installment obligations), no gain or loss shall be recognized to a corporation on the distribution of property in partial or complete liquidation." 26 U.S.C. (I.R.C.1954) § 336.

The committee reports accompanying § 336 do not state the committee's position on the applicability of the Bank of Stratford rule in interpreting this section. But §§ 311 and 336 of the Code correspond to §§ 311 and 336 of the House Bill as amended by the Senate, and the Senate derived these sections by splitting up one section, § 308, of the original

House Bill. See Sen.Rep. No. 1622, supra, at 247 and 258; and H.R.Rep. No. 1337, 83d Cong., 2d Sess. A90, A91 (1954). It is obvious from a reading of these sections together that they are designed to be parallel provisions, and we think they should be interpreted consistently.

The problem then finally resolves itself into the question of whether the distribution of the accounts receivable by the corporation was an anticipatory assignment *and* a realization of income within the scope of the decisions in Bank of Stratford and Horst. A careful study of the decisional law, which includes precedents of this court, compels us to answer this question in the affirmative.

In the recent case of Telephone Directory Advertising Co. v. United States, 142 F.Supp. 884, 135 Ct.Cl. 670, the plaintiff on the accrual method of accounting was the advertising broker for a large telephone company. Advertisers were billed by the telephone company and were required to pay a certain amount per month for each month in which their advertisement appeared in the telephone directory. The telephone company paid the plaintiff commissions limited to amounts collected from advertisers. The telephone company had exclusive control over the length of time a directory was outstanding and the estimated life of a directory was frequently extended or cut back as needs arose. At the end of each month a directory was outstanding, the plaintiff accrued on its books the monthly portions of the commissions it was entitled to receive from the telephone company. In 1950, the plaintiff was completely dissolved and all of its assets were distributed to its shareholders as a liquidating dividend. We held that the monies paid by the telephone company to the plaintiff's shareholders, as transferees of the plaintiff's assets, after liquidation were not taxable to the plaintiff corporation. Our decision was based on the fact that the plaintiff did *not* have a fixed and determined right to receive these com-

missions on the date of its dissolution. The plaintiff did not realize the income because it was not in existence either when the right to the income first accrued or when it was paid.

The distinctions between the Telephone Directory case and the instant case are apparent. The Williamson Corporation had a fixed right to future income on the date of its dissolution. It alone had earned the income; it had done everything necessary to perfect its right to the income; the money was due and owing the corporation on the date of dissolution.

In Rudco Oil & Gas Co. v. United States, 82 F.Supp. 746, 113 Ct.Cl. 206, decided by this court in 1949, an accrual method corporation was the lessee in a number of oil and gas leases under which it was producing and selling oil. The corporation declared a dividend out of earnings and in satisfaction of this dividend transferred to its only two shareholders (husband and wife) partial interests in a number of producing oil and gas leases. The transfer was for such length of time as would be required to pay the shareholders a stated sum of money out of the production receipts of each lease. At the end of a stated time the leases reverted back to the corporation. In a unanimous decision we held that the dividend in kind paid by the corporation was an assignment of anticipated corporate income made only to avoid taxes to the corporation and did not affect the corporation's liability for tax on the income. To the same effect see United States v. Joliet & Chicago R. Co., 1942, 315 U.S. 44, 62 S.Ct. 442, 86 L.Ed. 658; Jud Plumbing & Heating, Inc. v. Commissioner of Internal Revenue, 5 Cir., 1946, 153 F.2d 681; Standard Paving Co. v. Commissioner of Internal Revenue, 10 Cir., 190 F.2d 330, certiorari denied 1951, 342 U.S. 860, 72 S.Ct. 87, 96 L.Ed. 647; United States v. Lynch, 9 Cir., 1951, 192 F.2d 718, certiorari denied 1952, 343 U.S. 934, 72 S.Ct. 770, 96 L.Ed. 1342; Floyd v. Scofield, 5 Cir., 1952, 193 F.2d 594; First National Bank of St. Elmo v. United States, 7

Cir., 1952, 194 F.2d 389; J. Ungar, Inc. v. Commissioner, 2 Cir., 1957, 244 F.2d 90. Cf. Family Record Plan, Inc. v. Commissioner, 36 T.C. No. 33 (May 19, 1961).

Plaintiff would distinguish these cases on the grounds that involve mainly *accrual* method corporations which had transferred rights to future income as *ordinary* dividends, whereas the Williamson Corporation was a *cash* method taxpayer and its assignment of accounts receivable was a *liquidating* dividend. We see no merit in these distinctions.

As we stated above, we believe that both §§ 311 and 336 of the Code must be given consistent interpretations and that they are both subject to the Bank of Stratford rule. In cases as the one at bar, ordinary and liquidating dividends are to be treated alike. Furthermore, Jud Plumbing, Standard Paving, Scofield, Bank of St. Elmo and Ungar, all cited above, held the payment of liquidating dividends to be realizations of income to the corporations involved. We note particularly the case of Floyd v. Scofield, supra, because it contained the important factors present in the instant case, a cash method taxpayer and a distribution of accounts receivable as liquidating dividends. The Fifth Circuit Court of Appeals reached the same conclusion in that case that we reach now.

■ The differences in accounting methods noted by the plaintiff among the other cases are not significant either, although the problem before us now is outlined more strikingly with a cash method taxpayer. In any case the outcome hinges upon whether there had been a realization of income by the distributing corporation. It is fundamental that all economic gain is not taxable income and that it is the realization of income that is the taxable event. But the law contemplates that there is some point at which all income which has accrued, in the sense of having been fully earned, will be realized and taxable to him who earned it regardless of the accounting method involved. An acceptable accounting method should simply indicate this point logically and consistently.

■ Under the accrual method, income is held to be realized when there arises in the taxpayer a fixed and unconditional right to receive it. Continental Tie & Lumber Co. v. United States, 1931, 52 F.2d 1045, 72 Ct.Cl. 595, affirmed 1932, 286 U.S. 290, 52 S.Ct. 529, 76 L.Ed. 1111. Under the cash method of accounting the realization of income is usually deemed to occur when payment is actually received by the taxpayer. "But the decisions and regulations have consistently recognized that receipt in cash or property is not the only characteristic of realization of income to a taxpayer on the cash receipts basis. Where the taxpayer does not receive payment of income in money or property realization may occur when the last step is taken by which he obtains the fruition of the economic gain which has already accrued to him." Helvering v. Horst, 1940, 311 U.S. 112, at page 115, 61 S.Ct. 144, at page 146, 85 L.Ed. 75.

When the Williamson corporation paid the dividend to the plaintiff it obtained the fruition of the economic gain which had accrued to it upon the performance of the well services; it realized income. Paying the dividend was the enjoyment of its income. A body corporate can be said to enjoy its income in no other way. First National Bank of Stratford, supra.

■ Finally, the plaintiff says that if it should be determined that the Commissioner was authorized to adjust the corporation's final return to show the accounts receivable as income, then the Commissioner must also set off against this sum the amount of the accounts receivable outstanding at the beginning of the final tax year which were collected during that year. The plaintiff's theory is that the Commissioner by his action placed the corporation on the accrual basis for the last year and, therefore, accounts outstanding at the beginning of that year which were collected during that year belong to the prior year's income and are not properly includible in

the final tax return. The plaintiff did not present this contention to the Commissioner in his claim for refund; he mentioned it for the first time in the amended petition and briefs addressed to this court. This amended petition was filed more than 2 years after the payment of the tax deficiency. There is little doubt that this claim was not timely made. United States v. Andrews, 1938, 302 U.S. 517, 58 S.Ct. 315, 82 L.Ed. 398; Real Estate-Land Title & Trust Co. v. United States, 1940, 309 U.S. 13, 60 S.Ct. 371, 84 L.Ed. 542; First National Bank of Montgomery, Executor of the Estate of Algernon Blair v. United States, Ct.Cl., 280 F.2d 818. In any event, the Commissioner's adjustment did not necessarily put the corporation on the accrual basis, but merely affected the accounting treatment of one item in order clearly to reflect the realization by the corporation of earned income. In our view the adjustment by the Commissioner in this case has no direct relation to accounts outstanding from prior years or cash collected on these accounts during the final year of the corporation's existence. The same argument which plaintiff makes here was made and rejected in Carter v. Commissioner, 1947, 9 T.C. 364, affirmed 2 Cir., 1948, 170 F.2d 911.

The record indicates that $2,089.47 of accounts owing to the corporation on the date of its dissolution were uncollectible, yet these accounts were taxed to the corporation by the Commissioner. The corporation is not subject to tax on this amount. If and to the extent a tax on this amount has been assessed and paid, the plaintiff, as transferee of the corporation, is entitled to a refund. To this extent plaintiff's motion is granted and judgment to that effect will be entered, with the amount of recovery to be determined pursuant to Rule 38(c), 28 U.S.C. In all other respects defendant's motion is granted and plaintiff's petition will be dismissed.

It is so ordered.

DURFEE, LARAMORE, MADDEN and WHITAKER, Judges, concur.