Malcolm **ANDRESEN**

v.

The **UNITED STATES.**

No. 228-65.

United States Court of Claims.

Jan. 24, 1969.

Mitchell Rogovin, for defendant. Philip R. Miller and Joseph Kovner, Washington, D. C., of counsel.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS, COLLINS, SKELTON and NICHOLS, Judges.

## OPINION

### PER CURIAM:

This case was referred to Trial Commissioner Lloyd Fletcher with directions to make findings of fact and recommendation for conclusions of law under the order of reference and Rule 57(a). The commissioner has done so in an opinion and report filed on October 3, 1968. Plaintiff has filed no exceptions to or brief on this report and the time for so filing pursuant to the rules of the court has expired. On November 15, 1968, defendant filed a motion that the court adopt the commissioner's findings, opinion and recommended conclusion of law. Since the court agrees with the commissioner's findings, opinion and recommended conclusion of law, as hereinafter set forth, it hereby adopts the same as the basis for its judgment in this case without oral argument. Therefore, plaintiff is not entitled to recover and his petition is dismissed.

### OPINION OF COMMISSIONER

FLETCHER, Commissioner:

This is an action to recover Federal excise taxes paid by the plaintiff-taxpayer for the period June 30, 1959, to June 30, 1962. During those years, plaintiff was a member of the New Canaan Field Club (hereinafter generally referred to as the Field Club) located in New Canaan, Connecticut. The payments involved represent excise taxes on the dues paid by plaintiff to the Field Club for the period mentioned.

The issues presented arise under section 4243 of the Internal Revenue Code of 1954. Section 4241(a) imposes a 20 percent tax on dues and initiation fees in excess of $10 paid to any social,

John D. Heckert, Washington, D. C., attorney of record for plaintiff.

William C. Ballard, Jr., Washington, D. C., with whom was Asst. Atty. Gen.

athletic, or sporting club. Section 4243 (c), however, provides an exemption from the tax imposed by section 4241 for all dues or fees paid to any club "organized and operated primarily for the purpose of providing swimming or skating facilities for its members," if four further requirements specifically enumerated in the statute are satisfied. In addition, section 4243(b) exempts from the tax, within certain limitations, any amounts paid as dues or fees for capital improvements.

Plaintiff contends that the Field Club is the type of organization described in section 4243(c) and that his dues are, therefore, exempt from the excise tax. In the alternative, he asserts that, if his dues are not entitled to exemption under section 4243(c), then that portion of his dues and fees paid to the Field Club during the years under review and used by the Club for capital improvements should be exempt under section 4243(b). The Government responds that on the facts of the case, the requirements of neither section have been met.

The facts are set forth at length in the findings below, and here they will be summarized only to the extent necessary to explain the basis for the conclusion reached that plaintiff is not entitled to recover.

The New Canaan Field Club was organized under the laws of the State of Connecticut on August 30, 1956, as a nonprofit corporation without capital stock. At the time of the Field Club's formation, the swimming facilities available in New Canaan were limited to one country club pool, and a Kiwanis Club pond that was unsatisfactory as a recreational facility. These circumstances prompted many local residents of New Canaan to consider the creation of a community swimming facility. Shortly thereafter, the Field Club was organized as a family sports club to provide several types of recreational activities. However, it is clear on this record that it was organized primarily for the purpose of providing swimming facilities for its members, and the first major construction was an olympic-size swimming pool with related facilities and four lawn tennis courts.

During the years 1959 through 1962, the Field Club expanded its recreational facilities. The additions included two lawn tennis courts and a lawn tennis backboard, five paddle tennis courts, a tennis pro-shop, and a two-story warming hut for winter sports. These additions reflected the interest of the members in a variety of recreational activities. Nevertheless, the Field Club has continued to be operated primarily for the purpose of providing swimming facilities.

During the summer months, the Club has traditionally sponsored several social functions. Although it had no license to serve alcoholic beverages and, in fact, never served such beverages, it did permit members to bring their own bottles of liquor for consumption on the Club's premises. Moreover, while the Field Club at no time provided a special dance floor, it frequently provided live music, and members danced on the concrete apron beside the pool.

During the years involved, a number of capital improvements were made by the Club. These improvements were financed largely by membership dues and initiation fees. However, the Field Club never established definite projects of capital construction prior to the receipt of these funds, and at no time were the funds earmarked for capital improvements at the time of their receipt.

## THE PRIMARY PURPOSE ISSUE

Section 4243(c) of the Internal Revenue Code of 1954 provides, in pertinent part:

[T]here shall be exempted from the provisions of section 4241 all amounts paid as dues or fees to any club organized and operated primarily for the purpose of providing swimming or skating facilities for its members * * *.

In interpreting this statute, it must be remembered that, albeit in another connection, the United States Supreme Court in Malat v. Riddell, 383 U.S. 569, 86 S.Ct. 1030, 16 L.Ed.2d 102 (1966), has said that the word "primarily," when used in a tax statute, means "principally" or "of first importance." 383 U.S. 569, 572, 86 S.Ct. 1030. This standard, therefore, must be applied in the consideration of the Field Club's organizational and operational purposes.

## THE ORGANIZATION ISSUE

The Government urges that the Field Club was organized as a family sports club, and that swimming was only one of the contemplated activities. Great emphasis is placed upon the purposes set forth in the organizing committee's initial proposal, the articles of association, and the bylaws, all of which broadly define the Club's objective as the promotion of recreational and social activities. The Government relies upon these statements, points to the presence of four lawn tennis courts, and arrives at the conclusion that the Field Club was actually organized as a country club. These inferences, however, are not justified.

As noted above, the swimming facilities available in New Canaan prior to the Field Club's formation were quite limited. The town of New Canaan provided no public swimming pool, although it did provide a few tennis courts for recreational activities. Many residents were discouraged from applying for admission to the local country club (and to neighboring country clubs as well) because of long waiting lists and prohibitive costs. The alternative chosen by many residents of driving thirty minutes, or more, to the beach clubs situated on Long Island Sound was considered both inconvenient and inadequate.

■ The record here is replete with uncontroverted testimony that the dominant motivation of the Field Club's organizers was their recognition of the need for a community swimming pool in New Canaan. The Field Club was intended to fulfill this obvious need, with particular emphasis on a proper swimming facility for children. Contrary to the position taken by the Government, the evidence strongly supports the conclusion that the Field Club was organized primarily for the purpose of providing swimming facilities for its members. In the words of the Supreme Court, the providing of adequate and convenient swimming facilities was the matter "of first importance." Malat v. Riddell, supra, at 572, 86 S.Ct. 1030.

## THE OPERATION ISSUE

The Government strongly urges that the Field Club was, in fact, operated as a family sports club, and that swimming was of no greater importance than the other recreational activities at the Club. It is pointed out that, in addition to swimming, lawn tennis and paddle tennis were very popular sports among the members. Such popularity is borne out by the testimony of several club members, the construction of five paddle tennis courts, two additional lawn tennis courts, and a warming hut (essentially for the benefit of paddle tennis players) during the years under review. Furthermore, says the Government, the Club sponsored a number of country-club-type social functions for its members during the summer months. Also, the Government is disturbed by the fact that there is no geographic limitation on membership, and that a non-resident class of membership existed. The thrust of the Government's argument is to the effect that the various activities conducted at the Club diluted the importance of swimming, as such, with the result that the Field Club was actually operated as a sports club, or country club, having no singular predominant activity. Once again, the Government's position poses a clear case of "overkill".

■■ The only burden imposed upon plaintiff is to show that the Field Club was operated primarily, not exclusively, for the protected purpose. Malat v. Rid-

dell, supra. Clearly, the members engaged in a variety of activities at the Club. Moreover, the importance of lawn tennis and paddle tennis is amply supported by the record. The nature of the most recent capital improvements lends further support to this point. Nevertheless, these recreational activities at no time achieved the degree of dominance attributable to swimming.

During the relevant period, the Field Club's swimming program was consistently emphasized. A professional coach was hired for the purpose of teaching the children how to swim, and how to improve their competitive abilities. An extensive program of intra-club and inter-club swimming meets was scheduled and conducted. Throughout this period, the swimming pool remained the essential center of recreational activity, and constituted the most frequently utilized facility at the Club.

Several members testified to the paramount status of the swimming facilities at the Club, and the record as a whole is clear that swimming was the recreational activity most critical to the Field Club's existence. This finding is emphasized by the extensive use of the swimming pool (as compared to other facilities) by the many children at the Club. Furthermore, it should be noted that ice skating, also a protected activity, was very popular among Club members, particularly with their children. In this regard it should also be noted that, although construction of the warming hut was prompted largely by the members' interest in paddle tennis, the lower half of the hut was used chiefly in conjunction with ice skating.

It is true, as the Government points out, that the Field Club sponsored several social functions each year. The record shows, however, that these functions were entirely secondary in nature and were not an integral part of the Club's operations. In addition, despite the fact that the club rules impose no geographic limitation on membership, approximately 99 percent of the Field Club's members actually reside in New Canaan.

In short, the record amply supports the ultimate finding that the Field Club was operated primarily for the purpose of providing swimming facilities for its members.

## THE SPECIFIC REQUIREMENTS ISSUE

In addition to the statutorily required purposes of organization and operation discussed above, the exemption provided by section 4243(c) is conditioned upon the satisfaction of four specific requirements. Section 4243(c) provides, in pertinent part:

\* \* \* This subsection shall apply with respect to an organization only if it is established to the satisfaction of the Secretary or his delegate that—

(1) children will be permitted to use the swimming or skating facilities, on the basis of their own membership or the membership of adults;

(2) no beverage subject to tax under chapter 51 (distilled spirits, wines and beer) will be served or permitted to be consumed on any premises under the control of such organization;

(3) no dining facilities (other than facilities for light refreshment), and no dancing facilities, will be provided on any premises under the control of such organization; and

(4) such organization is not controlled by, or under common control with, any other organization.

The requirements of section 4243(c) (1) and (4) raise no problems. The parties agree that children have unrestricted use of the Field Club's facilities within the meaning of the statute. Likewise, there is agreement that the Field Club is not controlled by, or under common control with, any other organization. The Government contends, however, that dues paid to the Field Club are not entitled to exemption from tax because the specific requirements of section 4243(c)

(2) and (3) have been violated. In *my judgment*, the Government's contention in this respect is fully supported by the record in this case.

The Field Club sponsored several social functions each year. They will be hereinafter referred to as "Adult Parties," "Friday Night Affairs," and "Splash Parties."

Three Adult Parties were sponsored each summer during the years involved. Generally, the ladies on the Entertainment Committee for these affairs provided cheese snacks, cheese dip, and a variety of cold cuts which were served on paper plates. Occasionally, a caterer was brought in to prepare a buffet-type supper. At some of these parties music was provided by the Club in the form of a high school band, or perhaps only a piano player. Although a special dancing surface was not provided, the members danced on the concrete aprons surrounding the pool and under the snack bar canopy. Members frequently brought their own bottles of liquor which they consumed at the parties. While the Club itself never maintained a bar, employed any bartenders, or served any alcoholic beverages, it did provide "set-ups" for the members.

Approximately six Friday Night Affairs were held at the Club each summer. At these social functions, parents and their children swam and had dinner together. These affairs were in the nature of picnics with many families cooking their own food. There was neither entertainment nor dancing, nor set-ups provided by the Club. However, members who so desired brought their own bottles of liquor for consumption on the Club's premises.

The Field Club also sponsored several Splash Parties and a few teenage dances each summer. The Splash Parties were held on Sunday afternoons, and the activities consisted of swimming for members and guests, the serving of refreshments, and dancing to phonograph records. At the teenage dances the Club provided cookies, soft drinks, and a live band for dancing, which took place around the locker area and on the apron around the pool.

Plaintiff does not deny that, on the occasions described, there were both drinking and dancing on the Field Club's premises. However, he argues that the circumstances surrounding the admitted drinking and dancing, and what he calls the *de minimus* number of occasions involved, are not sufficient cause for loss of the excise tax exemption for dues paid to the Club.

■ The facts are clear that the Field Club does not have a license to serve alcoholic beverages and, in fact, has never served such beverages. Also, the bylaws of the Club prohibit the consumption of alcoholic beverages on the Club premises. The facts are equally clear, however, that this rule has never been enforced even though the Club officers have known prior to adult parties that liquor would be brought and consumed by members on Club premises. Clearly, consumption of alcoholic beverages on the Field Club's premises was a direct violation of section 4243(c) (2), supra.

Plaintiff does not translate his conception of "a de minimus number of occasions" into concrete terms. If a very small or trifling number of occasions was the intended meaning, the record clearly indicates to the contrary. Consumption of alcoholic beverages on the Field Club's premises occurred on numerous occasions.

Admittedly, as plaintiff contends, the Field Club at no time provided a special floor or surface specifically for dancing. Music was provided at many of the parties, however, and dancing actually took place on the premises in violation of section 4243(c) (3). Plaintiff's interpretation of section 4243(c), construing "dancing facilit(y)" to mean a special floor or surface solely for dancing, is unduly restrictive. The appropriate regulation, which defines "dancing facilities" to include "facilities for the furnishing of music (live or mechan-

ical) and space, for the purpose of social dancing," is a more reasonable construction of the statute, and fully describes the Field Club's actual activities. Treas. Reg. § 49.4243–3(b) (2), 26 C.F.R. 363 (1954).

No prudish attitude should be inferred from these observations. They are merely intended to reflect what Congress itself clearly intended by enacting section 4243(c). The social importance of non-profit swimming clubs, particularly those emphasizing recreational benefits for children, is the true basis of the exemption. The prohibition of common control in section 4243(c) (4) provides assurance that a country club cannot separate its swimming facilities and thereby obtain an exemption. Of greatest significance in the context of this case, the requirements of section 4243(c) (1), (2), and (3) were intended primarily to insure that the recreational needs of children are met, and that the social activities most closely associated with adults and country clubs are prohibited. See, H. Rep. No. 481, 85th Cong., 1st Sess., 41–42 (1958); S. Rep. No. 2090, 85th Cong., 2d Sess., 45–46 (1958).

Despite plaintiff's attempt to minimize the instances of adult drinking and dancing at the Field Club, the record plainly indicates that these practices were permitted at the Club on more than a so-called "de minimus" number of occasions.[1] The adult activities at the Field Club have violated the requirements of section 4243(c) (2) and (3). Therefore, plaintiff's dues paid to the Club are not entitled to exemption from excise taxes under that section.

## THE SUBSTANTIAL VARIANCE ISSUE

Plaintiff's petition sets forth, as an alternative ground for refund, the exemption from excise tax provided by section 4243(b) for amounts paid as dues and initiation fees for capital im-provements. Plaintiff's administrative claim for refund, however, made no mention of this ground, stating only that "Taxpayer is exempt from the payment of the tax by reason of Section 4243(c) of the Internal Revenue Code." It is the Government's position that there is a substantial variance between the administrative claim for refund and plaintiff's petition, and that, consequently, the alternative ground for recovery should not be considered. The Government's position is well taken.

Plaintiff weakly asserts that there is really no substantial variance between the administrative claim and the petition because both are based on an erroneously or illegally paid tax. The cases cited by plaintiff to support this assertion, however, impose considerably more specific limitations on the variance test.

The case of T. J. West Co. v. Rogan, 54 F.Supp. 460 (S.D.Cal.1944), involved an administrative claim for refund of a penalty paid for failure to file a personal holding company surtax return, the taxpayer contending that it was not a personal holding company. Subsequently, before the court, the taxpayer contended that the penalty was illegally assessed because its return was sufficient to constitute a personal holding company return. It was decided that the taxpayer was not precluded from recovering the penalty, despite the alternative theory advanced, because the factual basis for the contention that assessment of the penalty was illegal remained the same.

In Bowles Lunch, Inc. v. United States, 33 F.Supp. 235, 91 Ct.Cl. 292, (1940) the taxpayer's refund claim had been improperly characterized as a "loss on partial bad debt," although the claim set forth a detailed computation of the loss. It was held that the Government was fully advised regarding the basis of the taxpayer's claim and could not take

---

1. Even if the occasions were "de minimus," plaintiff has made no convincing showing that Congress intended any dilution what-soever of the absolute negative used in the statutory wording.

advantage of the improper characterization.

The entire scope and purpose of the variance rule was analyzed in the recent case of Union Pacific Railroad Co. v. United States, 389 F.2d 437, at page 442, 182 Ct.Cl. 103, at pages 108–109 (1968), where this court stated:

> It is an undisputed general rule that a ground for refund neither specifically raised by, nor comprised within the general language of, a timely formal or informal application for refund to the Internal Revenue Service cannot be considered by a court in which a suit for refund is subsequently initiated. [Citations omitted.] The rule that a taxpayer cannot present one ground for refund in its claim and a different ground in its petition is designed both to prevent surprise and to give adequate notice to the Service of the nature of the claim and the specific facts upon which it is predicated, thereby permitting an administrative investigation and determination. [Citations ommitted.] In addition, the Commissioner is provided with an opportunity to correct any errors, and if disagreement remains, to limit the scope of any ensuing litigation to those issues which have been examined and which he is willing to defend. [Citations omitted.] * * *

■ The administrative refund claim filed by plaintiff made no mention whatever of the alternative ground subsequently advanced in his petition. Moreover, the two grounds did not arise from the same factual basis and, in fact, were wholly unrelated issues. The primary purpose of the Field Club's organization and operation bore no reasonable relationship to the Club's disposition of dues and initiation fees paid by its members. As a result of the substantial variance between plaintiff's administrative refund claim and his subsequent petition in this court, the alternative ground for recovery cannot now be considered.[2] Union Pacific Railroad Co. v. United States, supra.

---

2. Even were it possible for the court to consider the alternative claim, plaintiff's cause would not be advanced. The guidelines for compliance with section 4243 (b) are set forth in Rev. Rul. 63–215, 1963–2 C.B. 548, requiring (1) that *prior* to the dues payment, action must have been taken by the Club to establish a definite capital construction project and (2) that the amounts paid by members must have been "earmarked" by the Club at time of receipt for that project. These requirements reflect a reasonable interpretation of the statute which must be accorded the effect of law. See Manhattan General Equipment Co. v. Commissioner of Internal Revenue, 297 U.S. 129, 56 S.Ct. 397, 80 L.Ed. 528 (1936). Plaintiff makes no serious contention that the Field Club complied with the two requirements of the Revenue Ruling. Accordingly, even if it were possible to consider his alternative contention, he would not be entitled to recover thereunder.