Joseph **HARING**

v.

**UNITED STATES of America.**
Civ. No. 28846.

United States District Court
N. D. Ohio, E. D.
April 30, 1956.

Callahan & Durant, Wentworth T. Durant, Dallas, Tex., W. Dean Hopkins, Cleveland, Ohio, for plaintiff.

Sumner Canary, U. S. Atty., Cleveland, Ohio, for defendant.

JONES, Chief Judge.

After paying deficiency taxes and civil tax fraud penalties on his income for the years 1944 through 1947, plaintiff filed claims for refund which were rejected by the Commissioner of Internal Revenue. This action is to recover said fraud penalties and the deficiency tax paid on 1944 income.[1]

There are two issues presented for the court's determination. First: Was the deficiency tax assessed on 1944 income barred by the statute of limitations? Second: Was the plaintiff guilty of civil fraud in understating his income for the years involved?

■■■ With regard to the first question, it is apparent that plaintiff did not sign his 1944 tax return as is required by 26 U.S.C. § 51. Accordingly, by authority of Lucas v. Pilliod Lumber Co., 281 U.S. 245, 50 S.Ct. 297, 74 L.Ed. 829, and Uhl Estate Co. v. Commissioner, 9 Cir., 116 F.2d 403, the statute of limitations imposed by 26 U.S.C. § 275 (1939 Ed.) does not apply, and the deficiency assessment was timely within the meaning of 26 U.S.C. 276 (1939 Ed.). However, the fact that plaintiff did not sign or verify the return rules out the possibility of fraud in making the return, and eliminates the fraud penalty under 26 U.S.C. § 293(b) (1939 Ed.).

The second issue is not so easy of disposition. Plaintiff is a butcher and a man of limited intellectual attainment. His brother, John, is of like mental stature, having had only an eighth grade education. Together these men ran a successful butcher shop apparently enjoying a steady commercial clientele. Joseph, the plaintiff, appears to have handled the bulk of the butchering duties, while John conducted the retail business and kept the books. Each year when it came time to prepare income tax returns John would compile the figures in his books and take them to an accountant who, from the figures handed him, would determine the taxable income of the partnership. From this information, John would determine the distributive share of each partner (on a 50–50 basis) in accordance with 26 U.S.C. §§ 181, 182 (1939 Ed.), and inform Joseph, who then had his individual return prepared by the same accountant and based on the amount of his distributive share—even though he realized that his actual income from the partnership considerably exceeded that figure. It is within this factual framework that the parties present their varied pictures.

Plaintiff protests that " * * * like millions of other Americans, on the subject of taxes, [he] was far over his head". And that while he was admittedly naive—and even stupid—in blindly following John's advice on income tax matters, still he had no intent to defraud the Government. He asserts that John might have erred in computing the partnership income but that John's error should not be imputed to Joseph. The Government argues that Joseph understated his income while fully realizing the financial facts of life and that there was considerable more to his income (and the income of the partnership) than he stated in his tax return.

It is difficult to believe that Joseph Haring—a man shrewd enough to conduct a successful commercial business, and to have a considerable investment in

---

1. The deficiencies for the years 1945 and 1946 are not contested in the complaint or made an issue by answer. No evidence having been introduced in regard to the 1947 deficiency, said deficiency must stand. Rogers v. Commissioner, 6 Cir., 111 F.2d 987.

securities—is as guiltless as he protests he is. Rather, I suspect that his blind reliance on John for income tax information was caused more by a conscious ignorance than by a naive ignorance.

 On the other hand, I am not satisfied that the Government has clearly and convincingly established fraudulent intent as it is required to do. The size of the deficiencies in plaintiff's reported income are indeed conducive to a strong inference of intent to evade tax. However, plaintiff's story does mitigate this inference when it is viewed in the context of income tax provisions relating to partnerships (supra). If plaintiff's reported income was not based on a distributive share of partnership profits, I would not be willing to accept his story of blind faith in John's bookkeeping. But viewed thusly, plaintiff's deficiencies appear to have been the result of " * * * negligence, or intentional disregard of rules and regulations but without intent to defraud * * *." And while I cannot agree that plaintiff is as pure as the new driven snow, I must conclude that the Government has failed to sustain its burden of proof.

Accordingly, rather than the fraud penalty imposed by 26 U.S.C. § 293(b) (1939 ed.), plaintiff should be penalized 5% of the total amount of the deficiencies assessed on his returns for the years 1944 through 1947, in accordance with 26 U.S.C. § 293(a), and the difference refunded.

This memorandum is considered to be compliance with Rule 52(a), Federal Rules of Civil Procedure, 28 U.S.C.A.

**Supplementary Memorandum on Motion to Amend**

 Because plaintiff did not sign his 1944 tax return, he did not file a return "required by this chapter", 26 U.S.C. § 291(a). In which case the Government is entitled to retain one-half of the 50 per cent addition for fraud for 1944 as a 25 per cent addition under 26 U.S.C. § 291(a). See Uhl Estate Co. v. Commissioner, 9 Cir., 116 F.2d 402.

This supplementary memorandum is in compliance with Rule 52(b), Federal Rules of Civil Procedure.

Motion granted.