410 F.2d 789
 NATIONAL NEWARK & ESSEX BANK, a National Banking Association, and Robert W. Ballantine, Executors of the Estate of William Clark Symington, Deceased
v.
The UNITED STATES.
 No. 59-68.
 United States Court of Claims.
 May 16, 1969.
 
 Joel A. Wolff, Newark, N. J., for plaintiffs; James C. Pitney, Newark, N. J., attorney of record.
 Ira M. Langer, Washington, D. C., with whom was Asst. Atty. Gen., Johnnie M. Walters, for defendant; Philip R. Miller and Joseph Kovner, Washington, D. C., of counsel.
 Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS, COLLINS, SKELTON and NICHOLS, Judges.
 ON PLAINTIFFS' MOTION AND DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT
 COLLINS, Judge.
 
 
 1
 Plaintiff executors seek a refund of $37,450.85, plus interest, allegedly constituting an overassessment of estate taxes levied upon the estate of William Clark Symington, deceased. The central question is whether plaintiffs, before suing in this court, filed a valid administrative claim for refund, as required by 26 U.S.C. § 7422(a) (1964). As that statute directs, a suit for refund cannot be maintained in this court unless and until a claim for refund has been duly filed with the Internal Revenue Service. Rosengarten v. United States, 181 F. Supp. 275, 149 Ct.Cl. 287, cert. denied, 364 U.S. 822, 81 S.Ct. 60, 5 L.Ed.2d 53 (1960); see Miniature Vehicle Leasing Corp. v. United States, 266 F.Supp. 697 (D.N.J.1967).
 
 
 2
 The case is before the court on cross-motions of the parties for summary judgment. All pertinent data are contained in the pleadings and briefs, with attached exhibits, and there is no dispute over the material facts. As explained below, we find for defendant.
 
 
 3
 Decedent Symington, a resident of New Jersey, died testate on July 28, 1963. His will was admitted to probate by the Surrogate's Court for the County of Essex, New Jersey, on August 12, 1963, on which date plaintiffs were appointed executors of the estate. A net estate tax of $480,111.75 was paid upon filing the Federal estate tax return on October 26, 1964.
 
 
 4
 Under the provisions of the will, the residue of the estate was to be divided into two equal parts and held as separate trusts. Estate taxes were payable out of this residue. One of the trusts was designed to qualify for the charitable deduction from the gross taxable estate. All the income from this trust was payable to decedent's wife during her lifetime. At her death, specific noncharitable bequests to named individuals were to be paid, with the remainder to go to specified qualifying charitable and educational institutions.
 
 
 5
 In computing the amount of the charitable remainder, the sums to be paid from the trust before the distribution to charity had to be subtracted from the amount of the trust corpus. One step in these calculations was the subtraction of the amount of New Jersey Transfer Inheritance Tax.[1] Plaintiffs had paid $110,000 "on account" to New Jersey on March 26, 1964 but the actual state tax owing was unknown at the time the Federal return was filed on October 26, 1964. Accordingly, plaintiffs used an estimated figure of $350,000 in preparing the Federal return.
 
 
 6
 On December 2, 1965, the executors were notified by the Internal Revenue Service of adjustments made in the return, resulting in an overassessment of $37,450.85,[2] the amount in controversy here. Included with the notice were forms showing the new computations on a line-by-line basis (Form 1272) and an explanation of the adjustments (Form 3230). Plaintiffs were requested to verify the computations and to execute and return Form 890-B, entitled "Estate Tax — Acceptance of Overassessment." Plaintiff Ballantine and plaintiff bank, by its Vice President and Trust Officer, signified their acceptance of the overassessment and filed the executed form on December 16, 1965.
 
 
 7
 The reason for the overassessment was the tax examiner's belief that the specific bequests payable from the trust residue should be reduced to present worth according to a life factor, since these bequests were not payable until after the termination of the life estate in the trust corpus. The decrease in the amount of the specific bequests increased the remainder to charity and the concomitant charitable deduction. The estate tax liability was accordingly less. In his recalculations the examiner employed the $350,000 New Jersey tax estimate used in the original return.
 
 
 8
 When the examiner's conclusions were internally reviewed by the Service, however, it was determined that the specific bequests were not "deferred payments,"[3] and that the examiner's reduction of the amounts of the bequests was improper. Accordingly, on March 22, 1966, plaintiffs were notified of a readjustment of the return which in essence reversed the calculations of the examiner in regard to the specific bequests and returned to the position originally taken by plaintiffs. The same forms as those sent previously were included to explain the new computations. The result, however, was a deficiency of $4,950.63.[4] Plaintiffs executed a second Form 890-B whereby they accepted the deficiency assessment, which was paid. The revised calculations also used the estimated New Jersey tax figure of $350,000.
 
 
 9
 The total inheritance tax liability to the State of New Jersey was in fact only $174,942.95. The balance due of $64,942.95 (in addition to the $110,000 previously on account) was paid by the executors on September 29, 1966. Plaintiffs state that the use of the estimated New Jersey tax figure in the Federal return instead of the actual amount has resulted in an overassessment of approximately $65,000 in Federal estate tax. It is clear that some amount of overassessment has been received and held by the Government.
 
 
 10
 Plaintiffs have not filed a claim for refund with the Internal Revenue Service on Form 843, the usual method.[5] However, they argue that the admission by the Service of an overassessment of $37,450.85 on the first Form 890-B, when accepted by the executors, was in fact a claim for refund. As authority for this position plaintiffs cite Rev.Rul. 68-65, 1968-6 Int.Rev.Bull. 25, 26:
 
 
 11
 The Form 870 on which the taxpayer has agreed to an overassessment of tax determined by the Service will, if executed and filed within the statutory period of limitations for filing a claim for credit or refund, be considered a valid claim for credit or refund of any overpayment of tax attributable to the overassessment. The grounds upon which the overassessment was determined by the Service shall be considered the basis of the claim. Bonwit Teller & Co. v. United States, 283 U.S. 258, [51 S.Ct. 395, 75 L.Ed. 1018] (1931); Ct.D. 334, C.B. X-1, 328 (1931).
 
 
 12
 Since this ruling was not published until February 5, 1968, 10 days before the filing of suit here, there might be some question concerning the applicability of that provision to this case.[6] Defendant, however, does not challenge plaintiffs' reliance upon the ruling, and we assume arguendo that it is applicable.[7]
 
 
 13
 As the body of the ruling explains, when the Service admits that a taxpayer has paid an overassessment, it is unnecessary to file Form 843, since the fact of overpayment and the reasons therefor are known by the Service prior to the execution of a form of the 870 or 890 series by taxpayer. However, the ruling provides that the grounds upon which the overassessment is determined by the Service shall be considered the basis of the claim. The obvious reason for this qualification is that the Service normally has no knowledge of the nature of a taxpayer's claim, and the burden is upon the taxpayer to apprise the Service of the essentials necessary to establish a right to a refund.
 
 
 14
 The attitude expressed in the ruling accords with the well-established principles governing administrative claims for refund, as set forth in such cases as Union Pac. R.R. v. United States, 389 F.2d 437, 182 Ct.Cl. 103 (1968), and American Radiator & Standard Sanitary Corp. v. United States, 318 F.2d 915, 162 Ct.Cl. 106 (1963).
 
 
 15
 It is an undisputed general rule that a ground for refund neither specifically raised by, nor comprised within the general language of, a timely formal or informal application for refund to the Internal Revenue Service cannot be considered by a court in which a suit for refund is subsequently initiated. United States v. Felt & Tarrant Mfg. Co., 283 U.S. 269, 51 S.Ct. 376, 75 L.Ed. 1025 (1931); Real Estate-Land Title & Trust Co. v. United States, 309 U.S. 13, 17-18, 60 S.Ct. 371, 84 L.Ed. 542 (1940); International Curtis Marine Turbine Co. v. United States, 56 F.2d 708, 74 Ct.Cl. 132 (1932); Midvale Co. v. United States, 138 F.Supp. 269, 133 Ct.Cl. 881 (1956); Williamson v. United States, 292 F.2d 524, 155 Ct.Cl. 279 (1961). The rule that a taxpayer cannot present one ground for refund in its claim and a different ground in its petition is designed both to prevent surprise and to give adequate notice to the Service of the nature of the claim and the specific facts upon which it is predicated, thereby permitting an administrative investigation and determination. United States v. Memphis Cotton Oil Co., 288 U.S. 62, 53 S.Ct. 278, 77 L.Ed. 619 (1933). In addition, the Commissioner is provided with an opportunity to correct any errors, and if disagreement remains, to limit the scope of any ensuing litigation to those issues which have been examined and which he is willing to defend. * * *
 
 
 16
 Union Pac. R.R. v. United States, supra, 389 F.2d at 442, 182 Ct.Cl. at 108-109.
 
 
 17
 Plaintiffs, as we understand them, do not dispute these principles. Their contention is that the calculations involving the charitable deduction necessarily and intimately involved the estimated amount of New Jersey inheritance tax. There fore, the Service — because it was aware that adjustments were required in the charitable deduction — was adequately apprised of the basis for plaintiffs' refund claim concerning the state tax, and the first Form 890-B was a valid claim for refund on the ground of overestimation of state tax. Plaintiffs rely upon language in Union Pac. R.R. v. United States, 389 F.2d 437, 443, 182 Ct.Cl. 103, 110 (1968), and National Forge & Ordnance Co. v. United States, 151 F.Supp. 937, 941, 139 Ct.Cl. 222, 223 (1957), which indicates that the Commissioner, in evaluating a refund claim, is deemed to have considered subsidiary issues which are an integral part of the issue presented in the stated claim for refund.
 
 
 18
 The National Forge case and several others, all of which involved a net operating loss or carryback problem, were discussed and distinguished in Union Pacific. We found in Union Pacific that, while in National Forge a particular method of computation was sufficiently called to the Commissioner's attention by the claim, the claims of plaintiff railroad, which necessitated a 44-year recomputation of taxpayer's earnings and profits, did not adequately notify the Service of an intent to claim refunds on grounds outside those stated in the claims.
 
 
 19
 The instant case is an even more appropriate one for the application of the Union Pacific doctrine. At the time the first Form 890-B was executed by the parties, neither plaintiffs nor defendant knew the precise amount of New Jersey tax to be paid. The estimated figure provided by plaintiffs was a constant used in all the computations. No separate calculations were necessary to arrive at the amount of the estimate. Plaintiffs at no time objected to defendant's use of the figure in determining the adjustments. Thus, at the time the first Form 890-B was executed the amount of the state tax was not in controversy. Because the figure was a constant in the calculations and because the Service's attention was not directed to the amount of the estimate by the charitable deduction issue, the overestimation of state tax cannot be said to be an intimately subsumed or subsidiary question raised by the refund claim. The issues are quite distinct. See Andresen v. United States, 405 F.2d 1232, 1238-1239, 186 Ct.Cl. 635, 645-647 (1969). For these reasons, it cannot be said that defendant's admission of an overassessment by virtue of improper determinations of the amounts of the specific and charitable bequests encompassed the present claim for overassessment based upon an overestimation of state inheritance tax.[8]
 
 
 20
 Plaintiffs further argue that defendant should have known the correct amount of the state inheritance tax from the copy of decedent's will and a knowledge of the size of the estate. Plaintiffs also point to the notice received by the Service from the State of New Jersey on October 12, 1966 (some 10 months after the last adjustments involved herein), which stated the correct amount of New Jersey tax.
 
 
 21
 The answer to this contention is that plaintiffs were in just as good a position to determine the amount of state tax owing, but at no time did they adjust the original estimate. Moreover, changes in state law or judicial interpretation thereof before final settlement may have rendered erroneous any ad hoc calculations by the Government concerning the state tax. At best, then, any determinations regarding the New Jersey tax would always be slightly uncertain until the inheritance taxes were paid. Accordingly, defendant cannot be faulted for not using an estimated figure more accurate than plaintiffs' in making the adjustments.
 
 
 22
 Plaintiffs have not argued that, when the Service finally received notice of the amount of New Jersey tax paid by the estate, anyone who had worked on the Federal return several months before even saw the notice, let alone remembered that the state tax figure used in preparation of the return was an estimate. It is not enough that defendant had information from which it could have deduced that plaintiffs were entitled to a refund. American Radiator & Standard Sanitary Corp. v. United States, supra, 318 F.2d at 920, 162 Ct. Cl. at 114; Rosengarten v. United States, 181 F.Supp. 275, 279, 149 Ct.Cl. 287, 294, cert. denied, 364 U.S. 822, 81 S.Ct. 60, 5 L.Ed.2d 53 (1960).
 
 
 23
 Moreover, a claim for refund must have a written component. American Radiator & Standard Sanitary Corp. v. United States, supra, 318 F.2d at 920, 162 Ct.Cl. at 113; Sicanoff Vegetable Oil Corp. v. United States, 181 F.Supp. 265, 269, 149 Ct.Cl. 278, 286 (1960). Plaintiffs did not in any manner notify defendant that it sought a refund by virtue of overestimation of state taxes subsequent to the Service's receipt of the notice from New Jersey.[9] Since, as we held above, the first Form 890-B did not apprise defendant of the fact that state inheritance taxes were overestimated, and since plaintiffs failed to otherwise call the issue to defendant's attention in writing, plaintiffs have not filed the requisite written claim for refund. Compare Benenson v. United States, 257 F.Supp. 101 (S.D.N.Y.1966), aff'd, 385 F.2d 26 (2d Cir. 1967).
 
 
 24
 The taxpayer has the burden of notifying the Service that it seeks a refund and of indicating the grounds therefor. Although the actual knowledge of the Service may lessen the need for formality or specificity in a written claim, the essential burden cannot be shifted from taxpayer to the Service.
 
 
 25
 For these reasons, plaintiffs' motion for summary judgment is denied, and defendant's cross-motion is granted. The petition is dismissed for failure to state a claim within the jurisdiction of this court.
 
 
 
 Notes:
 
 
 [1]
 26 U.S.C. § 2055(c) (1964)
 
 
 [2]
 In addition to the increase in the gifts to charity, the adjustments were an increase in the value of decedent's realty (with a concomitant increase in the marital deduction) and an increase in the amount of administration expenses
 
 
 [3]
 Since obviously payment of the specific bequests was deferred until the wife's death, what the reviewer apparently determined was that the requests were vested at the time of death
 
 
 [4]
 This presumably resulted from the other adjustments mentioned in footnote 2
 
 
 [5]
 Treas.Reg. § 301.6402-2(c). The period of limitations for filing claims for refund is either 3 years from the filing of the return or 2 years from the date the tax is paid, whichever date is later. 26 U.S.C. § 6511(a) (1964)
 
 
 [6]
 We note, without relying on this point, that the Introduction to the Internal Revenue Bulletin indicates that all rulings are retroactive unless otherwise indicated
 
 
 [7]
 We do not now determine the present status of those cases which have held that the execution of a waiver or acceptance form does not constitute, standing alone, a formal or informal claim for refundSee Cumberland Portland Cement Co. v. United States, 104 F.Supp. 1010, 1013, 122 Ct.Cl. 580, 590 (1952); Benenson v. United States, 257 F.Supp. 101, 108 (S.D. N.Y.1966), aff'd, 385 F.2d 26 (2d Cir. 1967); True Bros., Inc. v. United States, 93 F.Supp. 107, 111 (D.Mass.1950).
 
 
 [8]
 Because of our decision on the central issue, we need not decide what effect the execution of the second Form 890-B had upon the rights plaintiffs allegedly acquired by execution of the first
 
 
 [9]
 In executing the 890-B forms, plaintiffs were not precluded from later seeking a refund. Treas.Reg. § 601.105(b) (4)
 
 
 SKELTON, Judge (dissenting):
 
 26
 I respectfully dissent. In my opinion, the decision of the majority reaches an unconscionable result that I cannot agree with.
 
 
 27
 I start with the fact that when the estate tax returns were filed, they stated plainly and unequivocally that the New Jersey Transfer Inheritance Tax in the sum of $350,000 was Estimated. This was notice to the Government that this amount was not final and that an adjustment would have to be made when the final tax was determined. This fact was acknowledged in both of the 890-B forms that it sent to the plaintiffs. Both forms plainly stated:
 
 
 28
 It is understood that evidence of payment of estate, inheritance, legacy, or succession taxes to any state, * *, will be filed with the District Director of Internal Revenue as promptly as practicable. * * *.
 
 
 29
 Both the first and second forms 890-B required this report of state taxes to be filed by May 1, 1966. Thus, the Government was not only put on notice that the state inheritance figure was only an estimate and the final figure would have to be adjusted, but also the Government acknowledged this fact when it issued the first form 890-B on December 10, 1965, and again when it issued the second form 890-B on February 18, 1966. In the face of these facts, any internal revenue agent handling the case who did not know that the state inheritance tax was only an estimate and was to be adjusted before final settlement, would not be able "to see an elephant in a snowbank."
 
 
 30
 Proceeding, then, from the fact that the Government had knowledge that the state inheritance tax figure was only tentative and estimated and would have to be adjusted in the final settlement, I next consider the first form 890-B that the Government sent to the taxpayer. This form showed on overassessment of $37,450.85. The taxpayer signed it and returned it to the Government. The filing of this form served as a valid claim by the taxpayer for a refund, as provided by Revenue Ruling 68-65, I.R.B. 1968-6, 25. Of course, the Government contends that the form did not put the Government on notice that the state inheritance taxes were involved, notwithstanding the fact that on the face of the form there was printed and typed a statement that the state inheritance taxes were to be reported by May 1, 1966, which was printed and typed by the Government itself. It would seem that the "elephant" was not only plainly visible in the snowbank, but that he also left his tracks all over the place. In simple terms, the Government knew the state inheritance tax was only an estimate and that when the final figure was determined, it would have to be taken into consideration in the final settlement.
 
 
 31
 The state inheritance taxes were an integral part of taxpayer's claim from the beginning. They were involved in every calculation made by the Government with reference to taxpayer's taxes. For the Government to now say the state taxes were not a part of the taxpayer's claim is like saying "the hide and tallow are not a part of the cow."
 
 
 32
 At this point, it is established, in my opinion, that the taxpayer had filed a legal claim for a refund, which included the state inheritance taxes. The Government then recalculated the taxes due. The reviewer's memorandum is shown as defendant's Exhibit "A" attached to the Government's brief, and states that in computing the amount of the charitable deduction the taxes due the state must be subtracted from the corpus of the second trust. Yet, the Government piously asserts that it was wholly unaware that the state taxes were involved.
 
 
 33
 After recalculating the taxes, the Government sent the taxpayer a second form 890-B showing a deficiency of $4,950.63. This was in the form of a waiver and stated specifically that it was not a final closing agreement, but that its filing by the taxpayer would expedite the adjustment of the tax liability. The taxpayer signed and filed this form on this basis. The majority has not considered what effect, if any, this second form 890-B has on this case. In my opinion, the signing and filing of this form in no way prejudices the taxpayer's claim. If it could be said that the sending of this second form by the Government to the taxpayer was a rejection of the claim filed on the first form 890-B, then taxpayer is still in court on his first form 890-B claim because this suit was filed within two years after the second form was issued.
 
 
 34
 The Government acknowledges that it has collected $65,000 more taxes from this taxpayer than it is entitled to. This amounts to a legal extortion that should not be countenanced. The taxpayer has only sued for $37,450.85, which is slightly more than one-half of what he is entitled to.
 
 
 35
 For all of these reasons, I cannot agree with the majority opinion. I would grant the plaintiffs' motion for summary judgment and deny defendant's motion.