Joseph P. LUCIA, Plaintiff-Appellant,

v.

UNITED STATES of America et al.,
Defendants-Appellees.

No. 30342.

United States Court of Appeals,
Fifth Circuit.

Feb. 2, 1973.

Simpson, Circuit Judge, dissented in part and specially concurred in part and filed opinion in which John R. Brown, Chief Judge, and Wisdom, Goldberg and Godbold, Circuit Judges, joined.

Ingraham, Circuit Judge, did not participate in En Banc decision.

John G. Heard, Harry M. Reasoner, Thomas P. Marinis, Houston, Tex., Charles Alan Wright, W. Dean Hester, Austin, Tex., for plaintiff-appellant.

Meyer Rothwacks, John M. Dowd, Joseph M. Howard, and John P. Burke, U. S. Attys., Lee A. Jackson, Atty., Tax Div., U. S. Dept. of Justice, Washington, D. C., William S. Sessions, U. S. Atty., Hugh P. Shovlin, Asst. U. S. Atty., San Antonio, Tex., for defendants-appellees.

Before JOHN R. BROWN, Chief Judge, and WISDOM, GEWIN, BELL, THORNBERRY, COLEMAN, GOLD-BERG, AINSWORTH, GODBOLD, DYER, SIMPSON, MORGAN, CLARK and RONEY, Circuit Judges.*

* Judge Ingraham did not participate in the en banc decision in this case.

**568**

RONEY, Circuit Judge:

Appellant Joseph P. Lucia seeks injunctive and declaratory relief against an assessment of $2,653,640, plus interest, for unpaid wagering taxes. The District Court dismissed the complaint for lack of subject matter jurisdiction. A panel of this Court, relying on the principles set forth in Marchetti v. United States, 390 U.S. 39, 88 S.Ct. 697, 19 L.Ed.2d 889 (1968), and Grosso v. United States, 390 U.S. 62, 88 S.Ct. 709, 19 L.Ed.2d 906 (1968), reversed the dismissal on the ground that, absent the Government's showing of taxpayer fraud, the statute of limitations would bar the assessment and appellant would be entitled, therefore, to injunctive relief.[1]

On rehearing, the Court, sitting *en banc,* now decides that the assessment would not be barred by the statute of limitations. But we remand the case to the District Court for a factual determination of appellant's allegation that the assessment was arbitrary, capricious, and without factual foundation.

The ultimate question in this case is whether the facts alleged in the complaint come within a narrow exception to the Congressional mandate which denies federal courts the jurisdiction to grant injunctive relief against the assessment or collection of federal taxes.[2] Other than the statutory exceptions, which are not applicable here, the only basis for injunctive relief is that prescribed in Miller v. Standard Nut Margarine Co. of Florida, 284 U.S. 498, 52 S.Ct. 260, 76 L.Ed. 422 (1932), and Enochs v. Williams Packing & Navigation Co., Inc., 370 U.S. 1, 82 S.Ct. 1125, 8 L.Ed.2d 292 (1962). Under the holdings of these two cases, a federal court may enjoin the collection of federal taxes if the taxpayer plaintiff can show (1) that "it is clear that under no circumstances could the Government ultimately prevail," and (2) "that equity jurisdiction otherwise exists." 370 U.S. at 7, 82 S.Ct. at 1129. Injunctive relief is permitted under this test only if the Government's claim cannot be established "under the most liberal view of the law and the facts."[3]

To bring himself within this exception, plaintiff alleges, on two independent grounds, that the Government could not under any circumstances prevail in the collection of the taxes assessed: *first,* he contends that the Government's assessment is barred by the statute of limitations; and *second,* he argues that the assessment is arbitrary, capricious, and without factual foundation.

## I. *Statute of Limitations Defense*

Civil tax assessments, including the wagering excise tax,[4] must be made

---

1. Lucia v. United States, 447 F.2d 912 (1971).
2. 26 U.S.C.A. § 7421(a).
 "Prohibition of suits to restrain assessment or collection
 (a) Tax.—Except as provided in sections 6212(a) and (c), 6213(a), and 7426(a) and (b)(1), no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is the person against whom such tax was assessed."
3. 370 U.S. at 7, 82 S.Ct. at 1129; *see* Bowers v. United States, 423 F.2d 1207 (5th Cir. 1970).
4. 26 U.S.C.A. § 4401(a).
 "Imposition of tax
 (a) Wagers.—There shall be imposed on wagers, as defined in section 4421, an excise tax equal to 10 percent of the amount thereof.
 (b) Amount of wager.—In determining the amount of any wager for the purposes of this subchapter, all charges incident to the placing of such wager shall be included; except that if the taxpayer establishes, in accordance with regulations prescribed by the Secretary or his delegate, that an amount equal to the tax imposed by this subchapter has been collected as a separate charge from the person placing such wager, the amount so collected shall be excluded.
 (c) Persons liable for tax.—Each person who is engaged in the business of accepting wagers shall be liable for and shall pay the tax under this subchapter on all wagers placed with him. Each person who conducts any wagering pool or lottery shall be liable for

within three years after the tax return is filed.[5] If no return is filed, however, this three-year statute of limitations does not apply, and the assessment or collection proceedings may begin at any time.[6] Taxpayer contends that, the latter provision notwithstanding, the three-year limitations period applies when the failure to file a return is constitutionally protected under *Marchetti* and *Grosso*. If the limitations statute is applicable here, then the assessment is barred because the assessment of $3,913,761.74 (including $1,260,121.74 interest) for wagering excise tax liability during the period March 1, 1959, through November 21, 1963, was not made until July 29, 1969, almost six years after the last transaction and more than ten years after the first transaction on which the assessment was made.

 The validity of the wagering excise tax is not here in question. The courts have traditionally refused to challenge the federal government's power to tax unlawful activities,[7] so Congress undoubtedly has the power to assess and to collect taxes on unlawful gambling activities, including wagering.[8] A tax does not cease to be valid merely because it regulates, discourages, or even definitely deters the activities taxed or because it affects activites which Congress might not otherwise regulate.[9]

Several basic principles guide our decision that the statute of limitations is not here applicable.

 *First*, there is no substantive or fundamental right to the shelter of a

and shall pay the tax under this subchapter on all wagers placed in such pool or lottery. Any person required to register under section 4412 who receives wagers for or on behalf of another person without having registered under section 4412 the name and place of residence of such other person shall be liable for and shall pay the tax under this subchapter on all such wagers received by him."

5. 26 U.S.C.A. § 6501(a).
 "Limitations on assessment and collection
 (a) General rule.—Except as otherwise provided in this section, the amount of any tax imposed by this title shall be assessed within 3 years after the return was filed (whether or not such return was filed on or after the date prescribed) or, if the tax is payable by stamp, at any time after such tax became due and before the expiration of 3 years after the date on which any part of such tax was paid, and no proceeding in court without assessment for the collection of such tax shall be begun after the expiration of such period.
 . . . ."

6. 26 U.S.C.A. § 6501(c).
 "(c) Exceptions.—
 (1) False return.—In the case of a false or fraudulent return with the intent to evade tax, the tax may be assessed, or a proceeding in court for collection of such tax may be begun without assessment, at any time.

 (2) Willful attempt to evade tax.— In case of a willful attempt in any manner to defeat or evade tax imposed by this title (other than tax imposed by subtitle A or B), the tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time.
 (3) No return.—In the case of failure to file a return, the tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time.
 (4) Extension by agreement.—Where, before the expiration of the time prescribed in this section for the assessment of any tax imposed by this title, except the estate tax provided in chapter 11, both the Secretary or his delegate and the taxpayer have consented in writing to its assessment after such time, the tax may be assessed at any time prior to the expiration of the period agreed upon. The period so agreed upon may be extended by subsequent agreements in writing made before the expiration of the period previously agreed upon. . . ."

7. *See, e. g.,* License Tax Cases, 72 U.S. (5 Wall.) 462, 18 L.Ed. 497 (1866).

8. United States v. United States Coin and Currency, 401 U.S. 715, 91 S.Ct. 1041, 28 L.Ed.2d 434 (1971).

9. United States v. Sanchez, 340 U.S. 42, 71 S.Ct. 108, 95 L.Ed. 47 (1950).

period of limitations.[10] As a matter of constitutional law, statutes of limitations go to matters of remedy and do not involve the destruction of fundamental rights.[11] Thus, the extent to which a tax assessment is barred by time is within exclusive Congressional control, unlimited by the Constitution. This principle is manifest in the cases recognizing Congress' power to create a right with no time limitation on its exercise,[12] and by those decisions holding that, in the enforcement of Government tax claims, the United States is not barred by a laches defense.[13]

■ *Second,* limitations statutes barring the collection of taxes otherwise due and unpaid are strictly construed in favor of the Government.[14] In effect, a period of limitations runs against the collection of taxes only because the Government, through Congressional action, has consented to such a defense. Absent Government consent, no limitations defense exists.

*Third,* Congress has clearly provided that time will not bar the collection of taxes for which no returns have been filed:

"In the case of failure to file a return, the tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time."[15]

The legislative intent to condition a limitations defense on the filing of a return is reflected in the provision that time begins to run not when the return could or should have been filed, but only when the return is actually filed.[16]

■ The objective of this Congressional pattern—to ensure that passage of time will not prevent collection of the tax unless the Government has been informed by the taxpayer that there is, or might be, tax liability—is essential to our national tax system, which "is premised largely on the theory of self-assessment."[17]

Since Congress did not contemplate the frustration of the self-assessment system occasioned by *Marchetti, Grosso,* and *United States Coin and Currency,*[18] there could have been no legislative intent as to the effect of these decisions on the limitations defense. Congress, in addressing specific situations involving a failure of the self-assessment pattern, however, consistently provided that time would not bar the collection of the tax. False or fraudulent returns, filed with an intent to evade tax,[19] willful attempt to evade tax in any manner,[20] and fail-

10. Chase Securities Corp. v. Donaldson, 325 U.S. 304, 65 S.Ct. 1137, 89 L.Ed. 1628 (1945).

11. Campbell v. Holt, 115 U.S. 620, 6 S.Ct. 209, 29 L.Ed. 483 (1885) ; United States v. Nebo Oil Co., 190 F.2d 1003 (5th Cir. 1951).

12. Anderson v. United States Atomic Energy Commiss'n, 313 F.2d 313 (7th Cir. 1963) ; *cf.* Holmberg v. Armbrecht, 327 U.S. 392, 66 S.Ct. 582, 90 L.Ed. 743 (1946).

13. United States v. Summerlin, 310 U.S. 414, 60 S.Ct. 1019, 84 L.Ed. 1283 (1940) ; Olshausen v. C.I.R., 273 F.2d 23 (9th Cir. 1960), cert. denied, 363 U.S. 820, 80 S.Ct. 1256, 4 L.Ed.2d 1517 (1960).

14. McDonald v. United States, 315 F.2d 796, 801 (6th Cir. 1963) ; Pacific Coast Steel Co. v. McLaughlin, 61 F.2d 73 (9th Cir. 1932) ; Loewer Realty Co. v. Anderson, 31 F.2d 268, 269 (2d Cir. 1929).

15. 26 U.S.C.A. § 6501(c)(3) ; *see* Birmingham Bus. College, Inc. v. C.I.R., 276 F.2d 476 (5th Cir. 1960).

16. *E. g.,* Automobile Club of Michigan v. C.I.R., 353 U.S. 180, 77 S.Ct. 707, 1 L. Ed.2d 746 (1957) ; United States v. Thompson, 262 F.Supp. 340 (S.D.Tex. 1966) ; Haring v. United States, 142 F. Supp. 782 (N.D. Ohio 1956).

17. 9 Mertens' Law of Federal Income Taxation § 49.02, at 6, cited in United States v. Gilmore, 222 F.2d 167 (5th Cir. 1955).

18. See note 8, *supra.*

19. *See, e. g.,* Forman v. United States, 361 U.S. 416, 80 S.Ct. 481, 4 L.Ed.2d 412 (1960) ; Toledano v. C.I.R., 362 F.2d 243 (5th Cir. 1966) ; Spriggs v. C.I.R., 290 F.2d 181 (9th Cir. 1961).

20. *See, e. g.,* Jenkins v. United States, 313 F.2d 624 (5th Cir. 1963) ; Jaeger Motor Car Co. v. C.I.R., 284 F.2d 127

ures or delays in filing a return for any reason, justifiable or not,[21] are specific instances where the self-assessment system is thwarted; and in each case, Congress has provided that time will not bar assessment or collection proceedings until the return is filed. We cannot assume that Congress intended to accord any different treatment to the failure to file a return for Fifth Amendment reasons.

The constitutional dimensions of the federal wagering excise tax scheme, nevertheless, were dramatically affected by the United States Supreme Court's holdings in *Marchetti, Grosso,* and *United States Coin and Currency.* In both *Marchetti* and *Grosso,* the Court reasoned that the tax statutes required gamblers to file forms containing possibly incriminating information and that the Fifth Amendment privilege against self-incrimination could be raised as a defense to a criminal prosecution charging failure to file the required forms.

In *Marchetti,* the Court held that a defendant's proper assertion of his constitutional privilege against self-incrimination provided a complete defense to a criminal prosecution for willful failure to register[22] and for willful failure to pay the occupational tax before engaging in the business of accepting wagers, and for conspiracy to evade payment of such tax.[23]

In *Grosso,* the Court additionally held that the Fifth Amendment privilege against self-incrimination likewise prevented a prosecution for failure to pay the excise tax on wagering imposed by 26 U.S.C.A. § 4401, the statute under which the assessment in the case at bar has been made.

*United States Coin and Currency* was a forfeiture proceeding in which the respondent monies were declared forfeited pursuant to the provision that "no property rights shall exist in . . . property" used "in violating the provision of the internal revenue laws."[24] Violations of the same statutes controlling in *Marchetti* supported the forfeiture.[25] The Seventh Circuit concluded that the only apparent purpose of the forfeiture statutes under the circumstances was "to punish violators of [these statutes] by taking away money used in committing the violations."[26] The Court reasoned that, since *Marchetti* prohibits direct punishment of such violations, indirect punishment through forfeiture should similarly not be permitted. The Supreme Court, affirming, held that the Fifth Amendment privilege could be properly invoked in the case since the forfeiture statutes, when viewed in their entirety, are intended to impose a penalty only upon those taxpayers who are significantly involved in a criminal enterprise.

Delimiting the scope of these holdings, Mr. Justice Harlan's language in *United States Coin and Currency* articulates the issue in the case at bar:

"The Government's principal argument [that only criminal proceedings were proscribed, not civil proceedings such as forfeiture] turns upon an exceedingly narrow construction of our decisions in *Marchetti* and *Grosso.* In those cases, we took pains to make it clear that the Court in no way doubted the Government's power to assess and collect taxes on unlawful gambling activities. It was only the method Congress had adopted in collecting the tax that raised the Fifth

(7th Cir. 1960), cert. denied, 365 U.S. 860, 81 S.Ct. 826, 5 L.Ed.2d 823; Kalil v. C.I.R., 271 F.2d 550 (5th Cir. 1959).

21. *See, e. g.,* Automobile Club of Michigan v. C.I.R., *supra;* Jones v. United States, 371 F.2d 442, 178 Ct.Cl. 16 (1967); Birmingham Bus. College, Inc. v. C.I.R., *supra;* West Coast Ice Co. v. C.I.R., 49 T.C. 345 (1968).

22. 26 U.S.C.A. § 4412.

23. 26 U.S.C.A. § 4411.

24. 26 U.S.C.A. § 7302.

25. 26 U.S.C.A. §§ 4411, 4412.

26. United States v. United States Coin & Currency, 393 F.2d 499, 500 (7th Cir. 1968).

Amendment question. The statute commanded that gamblers submit special registration statements and tax returns that contained information which could well incriminate them in many circumstances. Because the risk of self-incrimination was substantial, we held that a Fifth Amendment privilege could be raised as a defense to a criminal prosecution charging failure to file the required forms. *Since it was only this method of tax collection which was subject to constitutional objection, we indicated that the Government remained free to collect taxes due under the statute so long as it did not attempt to punish the taxpayer for his failure to file the required documents.*"[27]

Herein lies the central issue: does the denial of the limitations defense constitute "punishment" of the taxpayer for failure to file a return? More specifically, has the exercise of the taxpayer's constitutional right against self-incrimination been impermissibly burdened by the tax statute's establishment of filing as requisite to a limitation period?

We hold that the collection of legally owed taxes at any time, without regard to the three-year limitation period, is not punishment within the ambit of these decisions.[28] The Government sought from Lucia only taxes and interest, not penalties, civil or criminal. In *Marchetti, Grosso,* and *United States Coin and Currency,* the Government sought to deprive the taxpayers of liberty or money, through sentence, fine, or forfeiture, that they could have retained had they complied with the revenue laws. Here, the Government seeks only to deprive Lucia of tax and interest, both lawfully accrued. Since this sum is nothing more than the cost he would have had to bear had he complied with the law, no "costly penalty" can be attributed to his failure to comply.

Lucia seeks support for his argument—that denial of the limitations defense constitutes a penalty—in a variety of cases which hold that an individual may not be deprived of either employment or a professional license simply because he asserts his privilege against self-incrimination in refusing to answer questions relating to his professional conduct.[29] In each of those cases, the individual was deprived of employment or a professional status to which he would have otherwise been entitled were it not for the assertion of his Fifth Amendment privilege.[30] Because there is no fundamental right to have taxes assessed and collected within any period of limitations, the taxpayer has not been penalized by being deprived of something to which he otherwise would have been entitled. The imposition of the tax was not the consequence of Lucia's refusal to file a tax return. Thus, the assessment and collection of taxes do not constitute retributive action by the Government. Lucia's treatment did not differ from that accorded any other taxpayer who fails to file returns, including those who obtain, as permitted by statute,[31] an extension of time for filing, and those whose failure to file results from unavoidable circumstances or excusable neglect.[32]

We hold that the period of limitations for the assessment of wagering excise taxes does not commence to run

27. 401 U.S. at 717, 91 S.Ct. at 1043, 28 L.Ed.2d 434 (*emphasis added*).

28. We assume, for the purpose of decision, that the taxes assessed would be otherwise legally due.

29. Uniformed Sanitation Men's Assn., Inc. v. Comm'r of Sanitation, 392 U.S. 280, 88 S.Ct. 1917, 20 L.Ed.2d 1089 (1968); Gardner v. Broderick, 392 U.S. 273, 88 S.Ct. 1913, 20 L.Ed.2d 1082 (1968); Spevack v. Klein, 385 U.S. 511 (1967);

Garrity v. New Jersey, 385 U.S. 493, 85 S.Ct. 616, 17 L.Ed.2d 562 (1967).

30. These cases, *id.,* were not relied on or cited by the Supreme Court in *Grosso, Marchetti,* or *Coin and Currency,* although the opinion of the Seventh Circuit in United States v. United States Coin & Currency, *supra,* relied in part on *Garrity.*

31. 26 U.S.C.A. § 6501(c)(4).

32. 26 U.S.C.A. § 6651(a).

until a return has been filed, even though to require a return would violate the taxpayer's constitutional right against self-incrimination. No return having been filed by Lucia for the period involved, the statute of limitations does not bar the assessment.

## II. *The Assessment*

On Lucia's allegations that the Government's assessment is "arbitrary, capricious, and without factual foundation," we remand the case to the District Court for a trial on the merits.

■ Following Pizzarello v. United States, 408 F.2d 579 (2d Cir. 1969), this Court holds that a taxpayer under a jeopardy assessment is entitled to an injunction against collection of the tax if the Internal Revenue Service's assessment is entirely excessive, arbitrary, capricious, and without factual foundation, and equity jurisdiction otherwise exists. We hold that such a set of facts would bring the taxpayer within the narrow bounds of the exception to the anti-injunction statute [33] designed by the United States Supreme Court in *Standard Nut Margarine Co.* and *Enochs.*

Inasmuch as *Standard Nut Margarine Co.* granted injunctive relief and *Enochs* denied it, the two cases together delineate the requirements for equity jurisdiction in tax cases.

An injunction barring tax assessment and collection was permitted in *Standard Nut Margarine Co.,* despite the Commissioner's argument that such relief was prohibited by the anti-injunction statute, on the finding that the excise tax there was assessed against a product that was not taxable at all under the governing Oleomargarine Tax Act.[34] The Government had assessed the tax, in disregard of prior contrary determinations by three federal courts and the Commissioner of Internal Revenue, un-

der circumstances that would have both destroyed the taxpayer's business and caused it financial ruin.

In *Enochs,* the Court held that an injunction was barred by the statute, even though the District Court which enjoined the collection of social security and unemployment taxes had found that the taxes were not, in fact, payable and that collection would destroy the taxpayer's business.[35] The validity of the tax turned on the employer-employee relationship between the owners of shrimp boats and their fishermen crews. A review of the record revealed that the Government's claim, that the fishermen were the corporation's employees under the statutory definition, had some foundation, even though the District Court had found otherwise. From this, the Court reasoned that, because the taxpayer could not clearly show "that under no circumstances could the government ultimately prevail," injunctive relief was improper.

The Court in *Enochs* specifically held that the mere showing that the tax is not due and that the legal remedy is inadequate is not sufficient to trigger the *Standard Nut Margarine Co.* exception. Speaking for the Court, Chief Justice Warren explained the manifest purpose of the anti-injunction statute:

"[T]o permit the United States to assess and collect taxes alleged to be due without judicial intervention, and to require that the legal right to the disputed sums be determined in a suit for refund. In this manner the United States is assured of prompt collection of its lawful revenue. . . .

"To require more than good faith on the part of the Government would unduly interfere with a collateral objective of the Act—protection of the collector from litigation pending a suit for refund."[36]

33. 26 U.S.C.A. § 7421(a) ; see note 2, *supra.*

34. 24 Stat. 209 (1886) *as amended* 32 Stat. 194 (1902).

35. Williams Packing & Navigation Co. v. Enochs, 176 F.Supp. 168 (1959).

36. 370 U.S. at 7, 82 S.Ct. at 1129, 8 L.Ed. 2d 292.

The *Standard Nut Margarine Co.* principle was confirmed, nonetheless, by the *Enochs* Court:

> "[If] it is clear that under no circumstances could the Government ultimately prevail, the central purpose of the Act is inapplicable and, under the *Nut Margarine* case, the attempted collection may be enjoined if equity jurisdiction otherwise exists. In such a situation the exaction is merely in 'the guise of a tax.'"[37]

The initial test for application of this standard was then articulated as

> "[W]hether the Government has a chance of ultimately prevailing . . . [as] determined on the basis of the information available to it at the time of suit. Only if it is then apparent that, under the most liberal view of the law and the facts, the United States cannot establish its claim, may the suit for an injunction be maintained. Otherwise, the District Court is without jurisdiction, and the complaint must be dismissed."[38]

In *Pizzarello*, the Second Circuit, upon determining that the tax assessment in question was excessive and was based on entirely inadequate information, relied on *Enochs* in reversing the denial of an injunction. *Pizzarello* was a wagering tax case that involved a projection of wagering, computed from a small amount of known wagers, much like the case at bar. The tax liability for gross wagers for five years was computed by applying the amount of average wagers accepted for a three-day period to the total number of days of operation. The Court found "no proof in the record . . . that Pizzarello operated as a gambler for five years or that, even if he did so operate, his three-day average . . . represented his average daily business for the other 1,575 days."[39] The Second Circuit said that "[n]o court could properly make such inferences without some foundation of fact."[40]

The tax assessment against Lucia was based on a Revenue Agent's calculation of gross wagers accepted by or on behalf of Lucia during the period March 1, 1959, to November 21, 1963. Available to the Agent was the bounty of a raid on Lucia's alleged gambling establishment and a seizure of one day's betting slips purportedly accepted during the 1962 football season. This evidence, by the Agent's calculation, indicated a total of $28,780 in bets accepted for that day. Upon the premises that wagers in the Houston area were accepted on six days per week and that the total suggested by the seized bet slips constituted a representative day, the Agent determined that gross wagers in the amount of $2,244,840 were accepted during the 13-week football season. Using this figure to represent 40% of the gross wagers during the entire year, the Agent projected annual gross wagers of $5,612,100. Eliminating one day per week, the Agent calculated that bets were accepted on 313 days annually and divided that number into the projected annual gross wagers, thereby computing the daily amount of gross wagers to be $17,930. From this figure and from his estimate of the number of days each month that wagers would be accepted, the Agent computed gross wagers on a monthly basis.

It is this method of computation which Lucia alleges to be "arbitrary, capricious, and without factual foundation." He stands ready, his brief indicates, to demonstrate on remand the impropriety of the projection procedure employed by the Government in its assessment.

The panel of this Court which first heard this case found two decisions of this Circuit controlling on the point. Mersel v. United States, 420 F.2d 517 (5th Cir. 1969), and Pinder v. United States, 330 F.2d 119 (5th Cir. 1964).

▮▮▮▮ Subjected to careful analysis, *Mersel* and *Pinder* do not conflict

37. *Id.* at 7, 82 S.Ct. at 1129.

38. *Id.* at 7, 82 S.Ct. at 1129.

39. 408 F.2d at 583.

40. *Id.* at 583.

with either *Pizzarello* or our decision in the case at bar. *Mersel* was a refund case in which the Government employed a similar projection procedure to estimate the amount of wagering tax owed. But the method of computation was not challenged by the taxpayers. Their proof was confined to an attempt to show that they had not engaged in wagering.[41] This Court held that the District Court's finding, that taxpayers were engaged in the business of accepting wagers, was not clearly erroneous. *Pinder* was also a refund suit in which we held that the taxpayer had failed to meet his burden of proving that the tax liability, based on a projected assessment, was improper.[42] Thus, both cases turned on the taxpayer's failure to carry his burden of proof. In this suit for injunctive relief, the taxpayer, Lucia, will have to prove his case upon remand, and the extent of our holding goes no further than to give him that opportunity.[43]

 We do not regard this decision as conflicting with the line of cases holding that injunctive relief will be denied if it appears that the Government can make at least some recovery of the tax assessed.[44] More fundamental considerations concern us here than a mere quarrel over the amount of the tax:

Was the taxpayer accepting wagers durations on remand will the District ing the entire period covered by the assessment? Are the Government's figures based on realistic projections or were they merely derived, Mandrake-like, from a filament of evidence and subjected to a sleight-of-hand computation? Does the 40% factor used in the computation have any factual basis, or is it merely the product of an agent's conjecture? Can the base day properly be assumed to be an average day for that week, much less for several years? Only after exploring all relevant consid-Court be able to determine whether the computative basis is so insufficient as to make the assessment an exaction in "the guise of a tax" rather than a legitimate tax on wagers.

### III. *Inadequate Remedy at Law*

 Even if it be shown that the assessment is merely an exaction in "the guise of a tax," Lucia would still not be entitled to injunctive relief if he has an adequate remedy at law. In other words, even if the anti-injunction statute would not bar District Court jurisdiction, the Court would still have no equitable jurisdiction under traditional equity concepts unless there is available to

---

41. Writing for this Court in *Mersel*, Judge Simpson pointed out that "the taxpayers' case in chief was devoted exclusively to proving that the plaintiffs had not engaged in gambling. . . ." He went on to note that "[the pre-trial order stated that one of the issues to be tried was whether the Commissioner's determination of the amount of taxes due was correct, and the taxpayers were on specific notice thereby that they were required to present evidence in their case in chief regarding the method of assessment if they wished to challenge it." 420 F.2d at 520.

42. Although *Pinder* partially rationalized the use of the projection method on the ground that the taxpayer failed to keep records required by Sections 4403 and 4423, a rationale probably abrogated by *Marchetti* and *Grosso*, *Pinder* is not authority for defending a projection that is arbitrary, capricious, and without factual foundation.

43. The attack on the projection and statistical computation does not relate to the tax on those wagers directly reflected by the seized betting slips or to any other portion of the assessment that had an obvious factual basis. That portion of the assessment, however, can easily be extracted upon a proper showing by the Government in the early stages of remand proceedings. The matter on the record before us is not clearly divisible, so we leave to the District Court the task of determining such partial relief or denial thereof as may seem appropriate. Our holding here is limited to the proposition that the Government cannot, by coupling an arbitrary and capricious projection with an assessment that is obviously factual, escape the District Court's jurisdiction outlined in *Standard Nut Margarine Co.*.

44. *See, e. g.*, Bowers v. United States, *supra*; Thrower v. Miller, 440 F.2d 1186 (9th Cir. 1971); Kelly v. Lethert, 362 F.2d 629 (8th Cir. 1966).

the taxpayer no legal remedy adequate to protect him from irreparable harm.

■ The Government argues that Lucia has an adequate remedy at law in the form of a refund suit. Although no provision for tax court jurisdiction of wagering excise taxes enables taxpayers to litigate the validity of an assessment *before* payment, in the manner provided for income, profits, estate, gift, and certain excise taxes imposed under Chapter 42 of the Internal Revenue Code,[45] the taxpayer need not pay the total tax assessed to bring a refund suit. He may instead pay a divisible portion of the tax, representing either a single wagering transaction or a number of wagering transactions but less than the totality assessed, and then test the validity of the entire assessment in a suit for refund brought in the Court of Claims or in the District Court.[46]

■ Lucia argues that a refund suit is inadequate for two reasons: *first*, a refund suit will not stay collection proceedings against the remainder of the assessment, and he would suffer financial ruin from a levy during the pendency of a refund proceeding,[47] and *second,* since the Commissioner's assessment is presumed to be correct and the burden is on the taxpayer to show that the assessment is incorrect and to show the correct amount of tax owed, Lucia would be compelled to abandon his Fifth Amendment privilege against self-incrimination to meet this burden in a refund suit.

■■ The Fifth Amendment argument is unpersuasive. First, Lucia has the burden of proving the allegations of his complaint in this equitable suit if he is to prevail. If he can carry the burden of proof in this injunctive suit, without incriminating himself, presumably he could carry it in the refund suit. Second, we have recently held in Urban v. United States, 445 F.2d 641 (5th Cir. 1971), that the refund procedure for litigating wagering excise taxes provides no basis for a broad constitutional attack on that tax, and we do not recede from that position.[48]

---

45. *See* 9 Mertens' Law of Federal Income Taxation § 50.08 (1971).

46. 26 U.S.C.A. § 7422; Flora v. United States, 362 U.S. 145, 80 S.Ct. 630, 4 L. Ed.2d 623 (1960). "[E]xcise tax assessments may be divisible into a tax on each transaction or event, so that the full-payment rule would probably require no more than payment of a small amount." 362 U.S. at 175 n.38, 80 S.Ct. at 646. See 362 U.S. at 171 n.37, 80 S.Ct. 630, for further discussion of this exception to the full-payment rule. *See also* Bowers v. United States, 423 F.2d 1207 (5th Cir. 1970); Cole v. Cardoza, 441 F.2d 1337 (6th Cir. 1971); Compton v. United States, 334 F.2d 212 (4th Cir. 1964), and District Court cases cited therein, 334 F.2d at 215 n.6; and Vuin v. Burton, 327 F.2d 967 (6th Cir. 1964).
Of course, payment of the tax on wagering transactions directly represented by the betting slips held by the Government would not meet the taxpayer's needs here. So that the computation could be tested, the divisible portion paid would have to include some of the alleged wagers encompassed by the Government's challenged projection.

47. *See* Ianelli v. Long, 71-2 U.S.T.C. ¶ 16,021 (W.D.Pa.1971). Since Lucia is under a jeopardy assessment, the danger is accentuated by the fact that procedural delays may be occasioned in the pursuit of a refund suit. After payment of the tax, an administrative claim for refund must be filed, 26 U.S.C.A. § 7422(a); *see* Algonac Mfg. Co. v. United States, 428 F.2d 1241 (Ct.Cl.1970); National Newark and Essex Bank v. United States, 410 F.2d 789, 187 Ct.Cl. 609 (1969). Unless the Internal Revenue Service grants an exception, six months must pass from the administrative filing date until suit may be commenced. 26 U.S.C.A. § 6532(a)(1) and (3).

48. Our holding here does not conflict with *Urban.* In that tax refund suit, taxpayer's brief pointed out that "[t]he sole question involved is whether or not the wagering excise tax and the wagering occupational stamp creating such tax are constitutional in that they violate the rights guaranteed under the Fifth Amendment." Taxpayer had stipulated that the assessment against him was correct if the wagering tax scheme was constitutional. We merely held in *Urban* that, under

██ We hold, nevertheless, that if Lucia can prove the allegations in his complaint, that there is a possibility of a financially ruinous levy during the pendency of a refund proceeding, then the legal proceeding offers him no adequate remedy at law. For the consideration of this point, we assume that, in the refund proceedings, Lucia would ultimately prevail on his proof that the assessment was arbitrary, capricious, and without foundation of fact, to wit, that it was not a tax at all but rather an exaction in "the guise of a tax," and that he can show that in the meantime he would have suffered bankruptcy as a result of the levy and collection. Under these circumstances, Lucia would have shown the irreparable harm required for equitable jurisdiction, and he would be entitled to such relief as the District Court might determine to be necessary.

██ This holding does not conflict with the substantial precedent that hardship alone is insufficient to justify injunctive relief against the collection of taxes.[49] The anti-injunction statute expressly forbids such relief, even where no adequate remedy at law is available to prevent such a disastrous result. As the Supreme Court stated in *Enochs*, "a suit may not be entertained merely because collection would cause an irreparable injury, such as the ruination of the taxpayer's enterprise."[50] But a finding that the assessment is arbitrary, capri-

cious, and without foundation in fact would free the Court of the constraint of the anti-injunction statute and would permit relief upon a showing by taxpayer that his legal remedy is inadequate to prevent irreparable injury.

The judgment of the panel is withdrawn but the decision of the District Court is reversed and remanded for further proceedings consistent with the views expressed herein.

Reversed and remanded.

SIMPSON, Circuit Judge, with whom JOHN R. BROWN, Chief Judge, and WISDOM, GOLDBERG and GODBOLD, Circuit Judges, join, dissenting in part and specially concurring in part:

I

I respectfully dissent from Part I of the Court's en banc opinion on rehearing, adhering to the views expressed in Part VI, pages 919–921, of my opinion for the original panel, Lucia v. United States, 5 Cir. 1971, 447 F.2d 912. This viewpoint is based upon the premise that *Marchetti*,[1] *Grosso*,[2] and *United States Coin and Currency*,[3] introduced "an entirely new constitutional dimension to the administration of the federal wagering excise tax scheme"[4] and the conclusion that "because of this radical alteration of the constitutional environment * * * decisions pre-*Marchetti*

that broad attack, *Marchetti, Grosso,* and *United States Coin and Currency* did not invalidate the wagering excise tax, 26 U.S.C.A. § 4401, and the wagering occupational tax, 26 U.S.C.A. § 4411.

49. *See, e. g.,* California v. Latimer, 305 U.S. 255, 59 S.Ct. 166, 83 L.Ed. 159 (1938); Monge v. Smyth, 229 F.2d 361 (9th Cir. 1956), cert. denied, 351 U.S. 976, 76 S.Ct. 1055, 100 L.Ed. 1493; Reams v. Vrooman-Fehn Printing Co., 140 F.2d 237 (6th Cir. 1944).

50. 370 U.S. at 6, 82 S.Ct. at 1129, 8 L.Ed.2d 292.
*Enochs* specifically contrasts § 7421(a), which prohibits injunctive relief against *federal* taxes without reference to the

adequacy or inadequacy of a legal remedy, with 28 U.S.C.A. § 1341, which forbids the federal courts to entertain suits enjoining collection of *state* taxes "where a plain, speedy, and efficient remedy may be had at law or in equity in the courts of such State." 370 U.S. at 6, 82 S.Ct. at 1128, 8 L.Ed.2d 292.

1. Marchetti v. United States, 1968, 390 U.S. 39, 88 S.Ct. 697, 19 L.Ed.2d 889.

2. Grosso v. United States, 1968, 390 U.S. 62, 88 S.Ct. 709, 19 L.Ed.2d 906.

3. United States v. United States Coin and Currency, 1971, 401 U.S. 715, 91 S.Ct. 1041, 28 L.Ed.2d 434.

4. 447 F.2d at p. 922.

and *Grosso* dealing with injunctive relief against wagering excise tax assessments may not be relied upon to dispose of the issue presented here." [5]

The panel attempt to assay the effect of this new constitutional dimension on the issues presented by *Lucia*'s appeal led to this result: " \* \* \* that Lucia may not be deprived of the defense of the statute of limitations for failure to file the required federal wagering excise tax returns",[6] because of his exercise of his Fifth Amendment right against self-incrimination.

In any accommodation between statute and the Constitution, I remain convinced that the statute in question, Title 26, U. S.C., Section 6501(c)(3), must give way to the constitutional privilege explicated in *Grosso* and given retroactive application by *United States Coin and Currency*. This conclusion may not be entirely satisfactory. The en banc majority rejects it.

But my opinion for the panel majority at least recognized and met head-on the problem of the application of the constitutional privilege as expanded by *Grosso* in the framework of the statutorily required filing of excise tax returns and the statutes of limitation. It seems to me that the position Judge Roney expresses for the majority of the en banc Court fails realistically to come to grips with the problem, in the same way that his dissent to the panel majority opinion did. Both opinions [7] rely on as controlling numerous pre-*Grosso* cases applying time tested rubrics of voluntary reporting and statute of limitation require-

ments. No meaningful accommodation into this framework of the *Grosso* principle emerges. This approach is the basis for holding that the statute of limitations cannot begin to run until a return is filed.

The majority is thus led inexorably to the remarkable conclusion at the end of Part I of the opinion, page 572, supra (page 8 of the typewritten copy):

"We hold that the period of limitations for the assessment of wagering excise taxes does not commence to run until a return has been filed, *even though to require a return would violate the taxpayer's constitutional right against self-incrimination.* No return having been filed by Lucia for the period involved, the statute of limitations does not bar the assessment." (Emphasis supplied.)

Faced with the problem of how to deal with the constitutional privilege as applied by the Supreme Court to federal wagering excise tax returns, the majority baldly asserts that the return must be filed even though in violation of the constitutional privilege. Absent such filing the statute of limitations is forever tolled. I should suppose, to the contrary, that when Title 26, Section 6501(c)(3) collides with the constitutional privilege, the statute, not the Constitution, must give ground. I adhere to the original panel solution as preferable on logical as well as legal grounds to the majority's startling conclusion that the statute takes precedence over the constitutional privilege.[8]

---

5. 447 F.2d at p. 922.

6. 447 F.2d at p. 923.

7. Compare 447 F.2d, pages 923–924, and cases there cited with the text of pages 568 and 569 of the en banc majority opinion and cases cited in the supporting notes.

8. From a practical standpoint, the effect of the original panel decision presents no

particularly alarming prospects The Secretary would have three years after such a raid as occurred here within which to make his calculations and execute a return as provided by applying Title 26, U.S.C., Section 6020. I suggest that in the present case this could as well have been accomplished in 1965, within three years of the raid, as in 1969, seven years thereafter.

## II

As to Part II of the majority opinion I concur in the result only: remand for a determination by a trial on the merits of the issue of whether the government's assessment is as charged by Lucia, "arbitrary, capricious, and without factual foundation".

For the majority of the original panel, I held in Part V of the panel opinion, 447 F.2d 918–919, that our decisions in *Pinder*[9] and *Mersel*[10] were indistinguishable on principle from the case at bar, and precluded the attempted arbitrariness attack on the assessment. The Second Circuit decision in Pizzarello v. United States, 2 Cir. 1969, 408 F.2d 579, was held to conflict with our *Pinder* and *Mersel* decisions.

The majority, by reasoning I am unable to follow, concludes that *Pinder* and *Mersel* are really not in conflict with *Pizzarello* after all and we are thus free to direct the lower court to apply *Pizzarello*. Foreknowledge that this was the law would have simplified my task in writing for the original panel, but I deemed that we were restricted by controlling precedent.

My disposition would be to treat this problem by saying straight out that to the extent they conflict with *Pizzarello*, *Pinder* and *Mersel* are receded from. This action is appropriate for the en banc Court, whereas the original panel felt bound by these prior decisions.

The result, directions to the lower court to apply the teachings of *Pizzarello* to the facts here, is the same in either event. For this reason, I concur in the result reached in Part II of the en banc majority opinion, although I would reach that result by a different route.

9. Pinder v. United States, 5 Cir.1964, 330 F.2d 119.

10. Mersel v. United States, 5 Cir.1969, 420 F.2d 517.